CHAMPION and others *vs.* BOSTWICK and wife.

Where three persons ran a line of stage coaches from *Utica* to *Rochester*, the route being divided between them into three sections, the occupant of each section furnishing his own carriages and horses, hiring drivers and paying the expenses of his own section, but the *money received as fare* of passengers, deducting therefrom only the tolls paid at turnpike gates, *was divided among the parties* in proportion to the number of miles of the route ran by each, *it was held*, that they were *jointly* liable as *copartners* to a third person, not a passenger, in an action on the case, for an injury received through the negligence of the driver of the coach of one of them.

*It seems*, that a party connected with a partnership, who *receives a compensation for his services*, graduated by the profits of the business, *is not a partner* as to third persons; to constitute him such, he must have such an interest in the profits as will entitle him to *an account*, and give him a specific lien or preference in payment over other creditors.

ERROR from the supreme court. Bostwick and wife brought an action on the case against Champion and others, for an injury sustained by the wife in being thrown from a wagon in which she was riding, in consequence of a stage coach coming in collision with the wagon through the negligence [176] of the driver of the coach. The plaintiffs recovered a verdict, and the defendants moved for a new trial, which was refused by the court, and judgment rendered for the plaintiffs. (See case, argument of counsel and opinion of court, 11 *Wendell*, 571, *et seq*) The defendants sued out a writ of error.

The cause was argued here by

Champion v. Bostwick and wife.

*B. F. Butler,* (attorney-general of the United States,) and *Roger M. Sherman,* (of Connecticut,) for plaintiffs in error.

*J. A. Spencer & P. Gridley,* for the defendants in error.

Points urged on the part of the plaintiffs in error:

I. The action against a master for the negligence of his servant, while acting in his employment, is founded on the principle that the servant derives his authority from the master, is under his direction, acts for his benefit, and is accountable to him for his conduct. The acts of the servant, in and about the business to which his employment extends, are therefore, in law as well as in reason, the acts of the master, who is justly held responsible therefor. 1 *Black. Comm.* 431. *Bac. Abr., Master and Servant, K. Lane* v. *Cotton,* 12 *Mod.* 488, 489. *Middleton* v. *Fowler,* 1 *Salk.* 282. *King* v. *Alenson,* 5 *Burr.* 2687. *Stone* v. *Cartwright,* 6 *T. R.* 411. *Bush* v. *Steinman,* 1 *Bos. & Pul* 404. *McManus* v. *Crickett,* 1 *East,* 106. *Nicholson* v. *Mounsey,* 15 *id.* 384. *Dean* v. *Branthwaite,* 5 *Esp. R.* 35. *Samuel* v. *Wright, id.* 263. *Laugher* v. *Pointer,* 5 *Barn. & Cres.* 547. 12 *Com. Law R.* 311. *Smith* v. *Lawrence,* 2 *Man. & Ryl.* 1. *Foster* v. *Essex Bank,* 17 *Mass. R.* 508.

II. In the present case, the plaintiffs below were bound to show, in order to entitle them to a verdict against all the defendants, that the driver by whose negligence the injury was done, was the servant of* all the defendants. This could only be done by showing, either, 1. That all the defendants *actually* united in employing the driver; or, 2. That they all stood in such a relation to [177] the person by whom he was actually employed as to make such employment in law the act of all. Partnership is such a relation, and all the co-partners are responsible for the negligence of a servant of the partnership, because the partnership is the employer and master, and the acts of the servant are under the control, and for the benefit of each member of the firm. (2 *Kent's Comm.,* 2 ed., *p.* 258. *Cases cited in* 11 *Wendell,* 580.)

III. No evidence was offered to show that all the defendants actually united in employing the driver; on the contrary, it appeared and was assumed by the court that he had been employed by Dodge solely, that the coach was possessed and controlled exclusively by Dodge, and that he alone paid all the expenses of that part of the road over which it ran. (1 *R. S.,* 696, § 6; *Croft* v. *Alison,* 4 *Barn. & Ald.,* 590; 6 *Com. Law R.,* 528.

IV. The decisions of the circuit judge and of the supreme court, that the mere division of the fare, after paying tolls, made all the defendants partners as to the whole line, that the driver on Dodge's section was therefore the servant of all the defendants, and that they are all responsible for his negligence, were erroneous. 1. There was no joint interest, communion or participation in the profits of the business, and consequently no partnership as between the defendants themselves. Nor were the defendants partners as regards third persons. (*Gow on Partnership,* 1, 5, 14, 15; 3 *Kent's Comm.,* 2d ed., *p.* 2 to 6; *Cooper* v. *Eyre,* 1 *H. Black.,* 37, 43; *Dry* v. *Boswell,* 1 *Campb.,* 329; *Fincle* v. *Stacy, Cas. Temp. King,* 9; *Holmes* v. *United Ins. Co.,* 2 *Johns. Cas.* 329; *United Ins. Co.* v. *Scott,* 1 *Johns. R.,* 106; *Post* v. *Kimberly,* 9 *id.,* 470; *Baxter* v. *Rodman,* 3 *Pick.,* 435; *Wetmore* v. *Baker,* 9 *Johns. R.,* 307; *Owston* v. *Ogle,* 13 *East,* 538; *Barton* v. *Hanson et al.,* 2 *Camp.,* 97; *S. C.,* 2 *Taunton,* 49; *Hiard* v. *Bigg, Man. Dig.* 273, *pt.* 5. 2. Even if the other defendants could be considered as partners with Dodge, in respect to third persons dealing with them and not having knowledge of the facts, or in respect to any particular branch of their business, they [178] were not so far partners as to constitute the relation of master and servant between them jointly and Stevens the driver, because, *First.* The other defendants had no agency in employing this driver; his authority did not flow from them; he was not accountable to them for his conduct, nor could they control him therein; he was not entrusted with the property of those defendants, nor engaged in their service. (*Cases cited under 1st point: Fletcher* v. *Braddick,* 2 *New*

Champion *v.* Bostwick and wife.

R. 182.)  *Second.* The rule adopted in this case carries the liability of stage proprietors beyond the principles of the common law, is not supported by any adjudged case binding on the courts of this state, and is moreover unreasonable, unnecessary to the protection of travellers, and against public policy.  (*Wayland* v. *Elkins*, 1 *Starkie*, 272 ; 2 *Com. Law R.*, 387 ; *Froment* v. *Coupland*, 2 *Bing.*, 170 ; 9 *Com. Law R.*, 366.     *Cases above cited.*)

*Points urged on the part of the defendants in error:*

The decision of the circuit judge was correct, that the division of the fare among the several proprietors, according to the distance run by each, constituted all who participated in such fare partners in the business of running stages, so as to render *all* liable for the acts of the driver of *each* for injuries to third persons.

I. The right to a division *of* and participation *in* the fare upon the principles above stated, rendered the proprietors *general partners* in the business of running stages over the whole line.  1. They were such partners upon the general principles of law, applicable to the formation of partnerships.     (3 *Kent's Comm.*, 2d ed., 23, 4, 5 ; *Collyer on Partnership*, 2 *Gow.* 14, 15 ; *Wheat. Sel.*, 859.)  2. They were such partners upon the express authority of adjudged cases.     (*Wayland* v. *Elkins*, 2 *Com. Law R.*, 387 ; 1 *Starkie*, 272 ; 3 *Com. L. R.*, 81 ; *Holt*, 227 ; 9 *Com. Law R.*, 366 ; 2 *Bing.*, 170 ; 13 *Com. Law R.*, 53, 56 ; 3 *Bing.*, 462 ; 5 *Petersdoff*, 34 ; *Manning's Dig.*, 220 ; 12 *Com. Law R.*, 321 ; *Collyer*, 13 ; 9 *Johns. R.*, 307 ; and the following cases, explaining the ground of that decision : 17 *Johns. R.*, 82 ; 2 *Caines*, 294 ; 12 *Johns. R.*, 401 ; 14 *id.*, 321 ; and, on the other side, (2 *T. R.*, 479 ; *Holt's N. P.*, 368 ; 9 *Mass. R.*, 538, 540 ; 12 *id.*, 34 ; 15 *id.* 116 ; 11 *Pick.*, 79 ; 1 *Binney*, 191 ; 4 *Dallas*, 434 : see also 11 *Wendell*, 571.)  3. The objection [179] that the partners participated in the *gross earnings*, instead of the *nett profits* of the business, and therefore were not partners, is untenable, because, *First.* The assumption is untrue in point of fact, as applied to this case.     *Second.* The authorities for this distinction are cases in which one party received a certain share of the earnings, as a mode of compensation for his services, or in which there was no *joint* and *mutual* interests in the profits.  (*Collyer*, 8 *to* 23, comprising the whole of § 5, and the notes illustrating the distinction ; *Douglas*, 371 ; 1 *H. Black.* 37 ; 4 *Mass. R.*, 424 ; 2 *Johns. Cas.*, 329 ; 9 *Johns. R.*, 470 ; 15 *Serg. & Rawle*, 137 ; 10 *Johns. R.*, 226 ; *Collyer*, 14 ; 4 *East.*, 144 ; 2 *H. Black.*, 590 ; 2 *Barn. & Cres.*, 401 ; 3 *Dowl. & Ryl.*, 751 ; 4 *Barn. & Cres.*, 867 ; 7 *Dowl. & Ryl.*, 444 ; *Collyer*, 15 ; 4 *Maule & Sel.*, 240 ; 1 *Campb.*, 330, 331 ; 2 *Bligh.*, 270 ; *Collyer*, 17 ; 3 *Kent's Comm.*, 33.)     *Third.* To extend this principle to the case at bar, would establish a rule that would destroy the whole class of partnerships, wherein one furnishes capital, and another labor, services, &c.  (*Collyer*, 8, § 4 ; 16 *Vesey*, 49 ; 4 *Barn. & Cres.*, 867 ; 16 *Johns. R.*, 34 ; 5 *Wendell*, 274.)

II. The defendants being general partners in running stages over the whole line, the driver of one of them (Dodge) was *in law* the servant of *all*, so as to render *all* responsible for injuries to third persons, occasioned by his negligence.  1. Being general partners, *all* are responsible for the acts of *one*, and for the acts of the *servant* of that one on the principle " *Qui facit per alium facit per se.*"  (1 *R. S.*, 699, § 6, 7 ; *Gow.*, 174, 5 ; *Collyer*, 252 ; 4 *Barn. & Cres.*, 223 ; *Collyer*, 253 ; 5 *Burr.*, 2685 ; 10 *Com. Law R.*, 316 ; 6 *Dowl. & Ryl.*, 275 ; 1 *Peake*, 75 ; 4 *T. R.*, 126 ; 7 *Johns. R.*, 260.)  2. The fact that Dodge *hired* and *paid* his own driver, makes no difference, as such driver was doing *the work of all*, and *for the joint benefit of all*, each sharing the profits of the whole route, and was in law the servant of all *quoad* third persons.  (*Gow.*, 36, 37, 118 ; *Selw. N. P.*, 843 ; 12 *Com. Law R.*, 321 ; 11 *Wendell*, 583.)  3. There is no distinction as to the liability of the defendants for injuries to strangers or to passengers dealing with the company.  The liability rests on the same basis, and [180] the authorities show it to be the same.  (1 *R. S.*, 690, § 6, 7, *and the cases referred to under the 2d subdivision of point 1st.*)  4. The fact that other

defendants are liable by reason of being partners of Dodge, renders it immaterial whether the relation of master and servant between *them* and the *driver of Dodge* existed *in fact*, by reason of any agreement between them; that driver being *in law* the servant of *all* and doing the work of *all*. The same consideration renders the principle settled in *Smith* v. *Lawrence*, (17 *Com. Law R.*, 289,) and supposed by the defendants to be settled in *Laugher* v. *Pointer*, (12 *Id.*, 311,) wholly inapplicable to this case. This being a case of partnership, *implies* the relation of master and servant; but were it otherwise, that relation would clearly exist here. (1 *Bos. & Pul.*, 404; 6 *T. R.*, 411; 6 *Exp. R.*, 6; 2 *New R.*, 182; 15 *East*, 384; 11 *Com. Law R.*, 321.) There is no limitation but by statute. (1 *R. S.*, 763; *Collyer*, 12.)

III. Independently of the above principles, the defendants had been owners and proprietors of the middle section, and gave no notice of having retired from the route in question, but kept up the same sign at their Utica office and on their coaches, and are therefore liable. (3 *Kent's Comm.*, 32; *Selw. N. P.*, 869, 870.)

IV. It is a proper case for damages for delay. (2 *R. S.*, 618, § 32; 1 *Archb.* 80, 265; *Graham*, 592.)

After advisement, the following opinion was delivered:

*By the* CHANCELLOR. The plaintiffs below have been permitted to recover for an injury sustained by the wife in being run over by the driver of a coach and horses, forming part of a continuous line of stages between Utica and Rochester. The injury took place on a part of the route between Utica and Vernon; and was done by a coach and horses belonging to Dodge, or which had been hired to him by the year, and by a driver in his immediate employ. And the only question for the consideration of this court is, whether the arrangement between the owners of the different parts of the line [181] between Utica and Rochester was such as to render Champion and Ewers liable to third persons for such an injury, as partners of Dodge in this part of the line. From the nature of the arrangement between the different stage owners, it is very evident that, as between themselves, Dodge alone ought to sustain the loss; and that if the recovery had been against him solely, he would not have been entitled to call upon the stage owners upon other parts of the line for contribution; and in case this recovery against the others is sustained, he would be bound to make good their loss if he were not insolvent. As between these different stage owners, Stevens, the driver, was clearly the servant of Dodge only. Dodge, therefore, is ultimately liable to them for any injury which they may sustain by the carelessness of his servant while in his employ, to the same extent as if such injury had been occasioned by his own carelessness while driving the coach and horses himself.

I think, however, that the arrangement made between the stage owners, as to the division of the passage money received upon any part of the line, was such as to render them all liable to third persons, as copartners, for such an injury as this; or for any injury to the passengers on any part of the route; and also rendered them liable for any contract made by either of such owners, which was directly connected with the receipt of the passage money, or the increase of the profits on any part of the entire route. By the agreement between them, the passage money received by either for the transportation of passengers over any part of the line constituted a common fund, out of which the tolls on the whole route were first to be paid, and the residue was then to be divided among the owners of the different parts of the line in proportion to the distances run by each, whether such passage money was received for the transportation of passengers over one part of the line or another. This division of the whole passage money, after paying out of the same the expenses of the tolls, was a division of the profits of a joint concern, so as to constitute a partnership between themselves as to that fund; to entitle either of them to an account; and to render

Champion *v.* Bostwick and wife

them liable to third persons as partners as to every thing in which the different owners of that fund had a joint or common interest. If Dodge [182] had received the passage money for the transportation of a passenger over his part of the route only, he would have received it for the benefit of the whole concern, as they all had a common interest in the profits of that part of the line. All, therefore, would have been liable to such passenger, as partners in this part of the route, for any damage he might sustain in consequence of a refusal of Dodge to transport him from Utica to Vernon; or for any injury which might happen to him by the carelessness of Dodge or his driver, or by reason of any defect in the coach, or harness, or the team. The case would be entirely different if each stage owner was to receive and retain the passage money earned on his part of the line, and to sustain all the expenses thereof; and was only to act as agent of the others in receiving the passage money for them for the transportation of passengers over their parts of the line. In that case there would be no joint interest, and no liability to third persons as partners.

The case of *Wetmore and Cheesebrough* v. *Baker and Swan,* (9 *Johns. R.* 307,) does not decide that there was no partnership in that case. As to a part of the transaction there was a partnership, not between the five persons, but between the two firms of W. & C., and B. & S., and Ostrom. Ostrom was to run one part of the route, W. & C. another part, and B. & S. ran the residue of the route. But the expense of extra carriages was to be borne by all of the parties jointly. To this extent there was a copartnership between the three owners of different parts of the route; and all would clearly have been liable to third persons for the line of extra carriages, if any had been necessary. But there was a settlement and an account stated between the three parties to this arrangement, one of the partners in each of the firms of W. & C. and B. & S. being present and agreeing to such liquidation of the accounts. In conformity with which settlement, the money then in Albany was to be paid to B. & S.; but it was afterwards received by the firm of W. & C., who were sued by B. & S. for money had and received to their use. The only question, therefore was, whether the settlement and adjustment of the joint concern [183] by Cheesebrough, the partner of Westmore, in their part of the route, was binding upon such partner. In other words, whether the running of the stages on the whole line was a joint concern between the five individuals as copartners, or a joint concern between Ostrom and the two firms of W. & C. and B. & S. And the court very correctly decided that there was no partnership existing between the five individuals which could interfere with a recovery in that suit.

It is not necessary to constitute a partnership that there should be any property constituting the capital stock which shall be jointly owned by the partners. But the capital may consist in the mere use of property owned by the individual partners separately. It is sufficient to constitute a partnership if the parties agree to have a joint interest in, and to share the profits and losses arising from the use of property or skill, either separately or combined. Here the capital which each contributed, or agreed to contribute, to the joint concern, was the horses, carriages, harness, drivers, &c., which were necessary to run his part of the route; and to be fed, repaired, and paid at his own expense. The only debts or expenses for which they were to be jointly liable, as between themselves, were the tolls upon the whole line; and the joint profits which they were to divide, if any remained after paying the tolls, was the whole passage money received upon the entire line. Although it may be fairly inferred that each party supposed that the expenses of running his part of the line, exclusive of the tolls, would be equal to the distance run by him, it by no means follows that any of them supposed that the actual passage money or profits of the different parts of the line would be in the same proportion; as it is a well known fact that the number of passengers who travel in public conveyances increases as you approach

Champion *v.* Bostwick and wife.

large market towns, or other places of general resort. The only object of the agreement to divide the passage money earned upon the whole line among the different proprietors, must have been to give to those who run that part [184] of the line where there was the least travel, a portion of the passage money on other parts of the route, as a fair equivalent for their equal contribution of labor and expense for the joint benefit of all. And as all the owners of the line were thus interested in every part of the route, and were liable to the passengers if they were unreasonably detained on the way, I am inclined to think that if the driver of either had refused to carry on the passengers over his part of the line without any sufficient excuse, either of the other parties whc · happened to be present might have employed another driver at the common expense to proceed with the team to the end of that route, although as between themselves the owner of that part of the line would be bound to pay such extra expense. And the same right would have existed if the driver, by reason of intoxication or otherwise, were incapable of discharging his duty with safety to the passengers. Although the title to the coach and horses for the time being, might not be so far vested in the partners as to authorize any of them to take them out of the possession of the general owner himself, under similar circumstances, the passengers might unquestionably be sent on by either of the others, at his expense; or at the expense of all the owners of the line who were interested in having it done, if he was unable to pay the expense.

There is a class of cases in which it has been held, that a person who merely receives a compensation for his labor, in proportion to the gross profits of the business in which he is employed, is not a partner with his employer even as to third persons. The distinction appears to be between the stipulation for a compensation proportioned to the profits, and a stipulation for an interest in such profits so as to entitle him to an account as a partner. (1 *Rose R.* 91.) A distinction which Lord Eldon says is *so thin* that he cannot state it as settled upon due consideration. But he says it is clearly settled as to third persons, though he regrets it, " that if a man stipulates that as the reward of his labor he shall have, not a specific interest in the business, but a given sum of money even in proportion to the quantum of profits, that will not make him a partner; but if he agrees [185] for a part of the profits as such, giving him a right to an account though having no property in the capital, he is as to third persons a partner: and no arrangement between the parties themselves can prevent it." *Ex parte Hamper,* (*Starkie's Law of Part.,* 137.) Carey, however, defends the principle upon which this distinction is based. He insists that as the person is to receive a compensation for his labor in proportion to the profits of the business, without having a specific lien upon such profits to the exclusion of other creditors, it is for their interest that he should be compensated in that way, instead of receiving a fixed compensation whether the business produced profits or otherwise; on the other hand, that if he stipulates for an interest in the profits of the business which would entitle him to an account, and give him a specific lien or a preference in payment over other creditors, and giving him the full benefit of the increased profits of the business without any corresponding risk in case of loss, it would operate unjustly as to other creditors; and therefore, that it is perfectly right in principle, that he should be holden to be liable to third parties as a partner in the latter case, but not in the first. (*Carey on Part.* 11, *note i.*) I am inclined to think this distinction is a sound one as regards the rights of third persons. But as between the parties themselves it is perfectly competent for them to agree that one shall have his full share of the anticipated profits as a compensation for his labor or skill, without running any risk of absolute loss, except as to third persons, if instead of producing profits the business should prove a losing concern. Many of the cases cited by the counsel for the plaintiffs in error, were those in which the question arose between the immediate parties to the agreement which was supposed to make them partners as between themselves; and they may

therefore be reconciled with other cases in which they were held to be liable as partners to third persons upon the principles before stated.

That one partner is liable in tort for the acts of his copartner in the prosecution of the copartnership business, as well as upon contracts for the benefit of the joint concern, appears to be well settled. And the case of *Wayland* v. *Elkins*, (1 *Starkie's R.* 272 ; *Holt's N. P.* 227, *S. C.*,) is in point to [186] show that each is liable in tort for the negligence of the servant employed and paid by one of them exclusively, by which a third person is injured by such servant while engaged in the business from which both were to derive a profit. If one partner would be liable for the negligence of his copartner in such a case, it seems to be a necessary consequence that he should be liable for the same act if done by the servant of such copartner. In relation to the case of *Barton* v. *Harrison*, (2 *Taunt. R.* 49,) in which it was held that a party jointly interested in a stage coach which was horsed by the proprietors separately on different parts of the line, was not answerable for corn purchased by one of the proprietors for the use of his own horses on his part of the line, C. J. Gibbs says, when the case was cited by the counsel for the defendant in *Wayland* v. *Elkins*, "I recollect the case very well, but the decision there turned upon the inferior contract, if I may so term it, between the parties. In that case there was a particular contract between the parties, and it was known in what situation they stood in respect to each other." In other words, it was known in that case, as in this, that the different proprietors were to run their several parts of the line with their own teams and at their own expense ; and the plaintiff had furnished one of the proprietors with grain for his horses, knowing that it was for his sole benefit ; and as it was furnished on his credit solely, the plaintiff had no just grounds for charging the partnership therewith. It was in fact trusting the individual with a part of the capital which he knew that individual had agreed to contribute to the partnership, and which the other partners are never liable for under such circumstances.

For these reasons, I think there was such a partnership between the plaintiffs in error in relation to the business in which Stevens, the driver, was engaged at the time this injury was done, as to render them all liable to the defendants in error for the consequences of his negligence ; and that the judgment of the supreme court should be affirmed.

On the question being put, *Shall this judgment be reversed?* all the [187] members of the court, (24 being present,) with but two dissenting voices, voted in the negative. Whereupon the judgment of the supreme court was AFFIRMED.

Judgment affirmed.