HARRY A. REOUX, Appellant, *v.* FIRST NATIONAL BANK OF GLENS FALLS, as Executor of ADELIA H. REOUX, Deceased, Respondent.

Third Department, June 28, 1962.

*James Clayton Straney* for appellant.

*Morris, Dillon & Schrade (Ernest B. Morris* of counsel), for respondent.

*Per Curiam.* The action concerned a dispute between the plaintiff and his mother regarding the validity of certain alleged transfers of various stock certificates. Such issues, as relate to the complaint itself, are not before the court on this motion, and we accordingly direct our attention to the facts having to do with the counterclaim.

The record shows that subsequent to the death of the husband and father of the parties, a well-defined testamentary plan was established by the mother to treat her son and daughter on equal terms. In 1953 this pattern changed and arguments arose which resulted in bitter and protracted litigation, of which this action is a facet.

In July of 1953, while the defendant mother was residing in a nursing home, she executed a will which plaintiff had prepared. Following the pattern of former wills, the residue was divided equally between her plaintiff son and daughter. In September, while living at the home of the plaintiff, she transferred to him certain certificates of stock which were the basis for the counterclaim. In November, having left the home of her son and returned to the home of her daughter, she had a new will drawn by an attorney who had not previously represented her and which will, dated November 9, 1953, left the residue to her daughter and her heirs. At the same time she had the attorney draft a letter, which is the basis for this motion. The letter reads as follows:

"November 9, 1953, The First National Bank of Glens Falls, Glens Falls, New York. Gentlemen: By my Will of this date, I have made no provision for my son, Harry Reoux. My reason for this action is that I have made transfers of securities to him in my lifetime, which with his other assets, should adequately provide for him and his family. I have reached this conclusion without suggestion from anyone, and as a result of considerable thought on my part. Very truly yours, Adelia H. Reoux. Witnesses: B. W. Francis, A. D. Clark."

The plaintiff alleges he first had knowledge of this letter on October 27, 1959, after the death of his mother and long subsequent to our original decision, dated May, 1957.

The decision of this court made no distinction between the cause of action alleged in the complaint and the cause of action alleged in the counterclaim.

On the original trial of this action, the plaintiff attempted to prove a binding agreement between him and his mother and father whereby he was to receive one half of their estate. We said that if there had been any agreement, as alleged by the plaintiff, the will of July, 1953 substantially carried out the terms thereof. We further determined that there had been overreaching and the violation of a confidential relationship on the part of the plaintiff. The Referee had refused to make such findings as to the counterclaim.

The question then is: If the letter, which is the basis of this motion, had been before the court at the time of its original decision, what effect would it have had on the said decision? To grant a new trial, under the circumstances herein, there must be a showing that the evidence is material as to the merits of the case and that it is reasonable to suppose that the conclusion of the court would have been otherwise if this evidence had been before it at the time of its decision. (*Cassab* v. *Hees,* 261 App. Div. 1115.)

This court said that plaintiff proved no agreement between the plaintiff and the defendant bearing upon the equal distribution of the defendant's property between her children in her lifetime, but the court then held that, in any event, the defendant had substantially complied with any alleged agreement respecting the division of her estate by the terms of the will of July 21, 1953, wherein she divided her residual estate between the plaintiff and his sister. A finding* to that effect was made at

*"11. If any such oral agreement was made in 1924, defendant subsequently complied with that agreement by the Will set forth in full in the record, which she made on June [*sic*] 21, 1953."

the request of the defendant who knew that a new will leaving everything to the daughter and her family and the letter of explanation, the subject of this motion, had been executed by her on November 9, 1953. While the findings of this court were warranted by the record as then constituted, they were, as disclosed by subsequent events, erroneous. We said the alleged oral agreement was not the real issue involved and accordingly, the decision relating thereto might be considered dictum. However, the determination of that issue may have influenced the decision of this court. It follows that, in the interest of justice, the finding, while not controlling, must be given consideration in determining the motion.

The basic reasons for this court's dismissal of the counterclaim were findings that a confidential relationship existed between the parties and that the acts of the plaintiff, under the circumstances, amounted to undue influence and overreaching on his part. After permitting a reargument, this court adhered to its original decision (4 A D 2d 805).

It is not disputed that at the time the letter of November 9, 1953 was written, the defendant was not under the influence of the plaintiff. The attorney, who prepared the letter, testified at a subsequent will contest trial: "Furthermore, she stated that she did not want to make any provision for her son Harry; that she had made various transfers of securities, investments and assets to him and she felt he was well provided for." Further, he stated: "She told me that, again, she didn't want to leave anything to Harry, and expressed the same reasons that she had before, namely, that he was well provided for, and that she had made previous gifts to him, I gather in substantial amounts." These statements, together with the additional testimony offered as to the testamentary capacity of Mrs. Reoux, affirm the fact that if she were competent to make the will of November 9, 1953, she was equally competent on the date to "reaffirm" the transfer of securities, the subject matter of the counterclaim. It seems apparent that the defendant realized that the will of November 9 was a substantial departure from the pattern previously adhered to and the letter of the same date was an explanation for the change, to wit, that she had transferred to plaintiff securities within a relatively short period of time.

Subsequently in August, 1954, when the plaintiff wrote to the defendant concerning the stock certificates, which were the basis of the complaint, she replied as follows:

"August 2, 1954 Dear Harry: I have received your registered letter demanding that I turn over all of my stocks to you. You told me last winter that the paper you had me sign was for the Imperial and other stocks that I gave you last fall. I never intended giving you any more of my stock than you already had and I am not going to give you any more. Mother."

This letter was written while defendant was living with her daughter and when read in context with the letter of November 9, 1953 would seem to be a further reaffirmance of the gift of the subject matter of the counterclaim. It appears undisputed in the present record that the only securities given to the plaintiff by the defendant prior to September, 1953 totaled $9,500.

Without the letter of November 9, 1953 and the conversations of the attorney who prepared the letter quoted above, the letter of August 2, 1954 would not have the same impact. It is undisputed that the Imperial stock had been given by the defendant to the plaintiff in September, 1953 and was one of the stocks sought to be recovered in the counterclaim.

The letter, which is the basis for this motion, might, upon a new trial, lead to a different result. It is of strong probative force and tends to contradict the testimony of Mrs. Reoux concerning the transfer of securities. On a motion of this kind, of necessity we must make observations as to the purported new evidence, but such observations are not to be considered as determinative of the issues upon a retrial. Upon a new trial, the introduction of the letter might conceivably have no effect or it might be determined from it that there was no overreaching or that if there had been overreaching, the letter, written when the defendant was under no force or duress, was intended to forgive any acts of the plaintiff and to reaffirm the gift of the stock certificates. It is our considered opinion that where such doubt exists, it constitutes the basis for the granting of a new trial within the framework of the rule enunciated in *Collins* v. *Central Trust Co. of Rochester* (226 App. Div. 486, 488) where the court said: "The fundamental and underlying test to be applied to motions of this character is whether the newly-discovered evidence is of such a nature, and is so positive and convincing, that it will, in all probability, produce a different result, if a new trial is had."

We recently granted a new trial, in the interest of justice, where there was some doubt as to whether plaintiff had knowledge of an alleged material witness, known to both defendants, but who failed to produce the witness at the trial. (*Brinkman* v.

*Brinkman,* 15 A D 2d 587.) Here, we have documentary evidence in the possession of the defendant, but not within the knowledge of the plaintiff at the time of the original trial and not before this court on the appeal therefrom.

In *Hyman* v. *Dworsky* (239 App. Div. 413, 419), this court said: "Newly-discovered evidence contradicting the evidence of a witness upon a material issue is in general sufficient ground for applications of this sort."

The executor further contends that the motion should be denied because of the laches of the plaintiff. Concededly there was considerable delay between the time the plaintiff first acquired knowledge of the letter and the motion for a new trial, but because of the unusual and exceptional circumstances alluded to and in the interest of justice, we are constrained to overlook the delay.

In *Harago* v. *Commonwealth Bank* (136 Misc. 735, 739) Mr. Justice Frankenthaler observed: "But even if he has not moved in the matter with diligence, his case is one in which the interests of justice require a new trial. (*Frohlich* v. *Zeltzer,* 185 App. Div. 103, 110.) The comments of the court in *Platt* v. *Munroe* (34 Barb. 291, 294) are quite appropriate here: 'The books are full of exceptional cases, in which development of truth and the promotion of substantial justice have been deemed sufficient reasons for granting new trials, although they were not within any former precedent, and consequently not within the operation of any principle or rule established for the guidance of the courts in the exercise of their discretion.'" (See, also, *Schnur* v. *Cohen,* 152 Misc. 676; *Stephens* v. *Stephens,* 5 A D 2d 962; *Brinkman* v. *Brinkman,* 15 A D 2d 587.)

It has been aptly stated that "rules of law are intended to serve and not to frustrate the ends of justice". (*Schnur* v. *Cohen, supra,* p. 678.)

The litigation involving the Reoux family has multiplied into many facets and forms and there should be finality to it all without further delay. Courts do not sanction such long and protracted litigation, especially between members of a family, and the issues hereto should be determined forthwith by way of an amicable settlement or a speedy trial.

We determine that, in the interests of justice, the motion for a new trial should be granted.

The order of Special Term should be reversed, on the law and the facts, and the motion for a new trial granted, with costs to abide the event.

Bergan, P. J., Gibson and Herlihy, JJ., concur; Coon and Reynolds, JJ., dissent and vote to affirm.

Order of the Special Term reversed, on the law and the facts, and motion for new trial granted, with costs to abide the event.

Within the terms of the stipulation heretofore filed the case is referred to Hon. HARRY E. SCHIRICK, Official Referee, to hear and determine.