■ TERRI HAWKINS, an Infant, by Her Father and Natural Guardian, FRED HAWKINS, et al., Respondents, v. WILLIAM F. REGAN, INC., Appellant.— In a negligence action to recover damages for personal injuries of the infant plaintiff and for medical expenses, etc., of her father, defendant appeals from (1) an interlocutory judgment of the Supreme Court, Kings County, entered April 1, 1971 against defendant, upon a jury verdict after trial on the issues of liability only, and (2) an order of the same court, entered the same day, which denied defendant's motion for a new trial on the ground of newly discovered evidence. Appeal from interlocutory judgment dismissed, without costs, as academic, in view of the determination herein upon the appeal from the order.

Order reversed, motion for new trial granted, with costs to abide the event, and interlocutory judgment vacated. Defendant is a privately owned corporation engaged in the business of selling cemetery monuments. It owns property across the street from a Brooklyn cemetery, consisting of a small office and a lot where tombstones are erected for display purposes. The tombstones are made in two parts, consisting of a base and the monument portion which is set upon the base and is called a "die". The infant plaintiff testified that on the evening when the accident happened she and a girlfriend were playing handball against the wall of a supermarket near defendant's place of business. There came a time when the ball went across the street onto defendant's property. The infant plaintiff further testified that she entered defendant's lot and discovered the ball lying near one of the tombstones. As she bent down to pick up the ball she saw that the die was twisted "half off the base". Although she never touched the stone, the die portion suddenly fell on her foot and injured her. The president of defendant testified that the die portion of the stone weighed 1,000 pounds and that the base weighed 800 pounds. It took three men with the use of crowbars to place the stone in question. He further testified that the stone would fall only if pushed. The jury returned a verdict in plaintiff's favor on the issue of liability and thereafter defendant moved, at the time of the assessment of damages, for a new trial on the ground of newly discovered evidence. In support of this motion defendant produced the statement of the girlfriend with whom plaintiff claimed she had been playing handball prior to the occurrence. This document is in material conflict with the infant plaintiff's version of the incident. It says nothing about the alleged handball game, but states that "when we came to the Headstone display on Brooklyn and Tildon [*sic*] Ave. we sat down and began to fools [*sic*] around with some headstone [*sic*] and one of the headstone [*sic*] fell on Terrie's foot." On this appeal defendant has confined its argument to the question of whether the girlfriend's statement may be considered "newly discovered" evidence. The trial court found that defendant had not exercised due diligence because it failed to attempt to locate the girlfriend prior to trial. We disagree. In July, 1968 defendant conducted an examination before trial of the infant plaintiff. At this examination, the latter testified that at one point in the handball game the ball went overhead and landed on defendant's property. She went across the street to get the ball but her girlfriend did not come with her. In fact, it was *at this point that the girlfriend left the scene and went home.* It was at the trial that the infant plaintiff first gave the girlfriend's name as Frances Ford. The former stated that Frances had moved away and that she had made several attempts to learn Frances' whereabouts prior to the trial but on each occasion her efforts were unsuccessful. On redirect examination she contradicted the testimony she had given at the examination before trial. On her redirect examination she testified that when she went to retrieve the ball Frances did not go home, but rather remained across the street until the accident happened. After the stone fell, Frances came on defendant's property, saw the infant plaintiff's condition and subsequently went for help. In our opinion, the infant plaintiff's testimony at the examination before trial misled defendant into the justifiable belief that Frances was not a witness to the accident. It was only when the infant plaintiff changed her story in the midst of the trial that defendant became aware of the importance of Frances' testimony as a witness. The jury returned a verdict in plaintiff's favor on the issue of liability only and the case was adjourned for a trial on the issue of damages. In the meantime a search for the missing girlfriend was instituted and her statement was obtained. On the

adjourned date, defendant promptly moved for a new trial on the basis of this statement, but the motion was denied. Under the foregoing circumstances, a new trial on the ground of newly discovered evidence should have been granted. The infant plaintiff's entire case was predicated upon her highly improbable testimony that a 1,000 pound die was twisted "half off the base" by some unknown agency and that, although she never touched it, it fell as she bent to pick up her ball. The statement of Frances Ford directly contradicts the testimony of the infant plaintiff and provides a reasonable alternative explanation for the happening of the accident to the effect that the girls were "fooling around" with the stone and thereby caused it to fall (see *Frohlich* v. *Zeltzer*, 185 App. Div. 103; *Schnur* v. *Cohen*, 152 Misc. 676; *Gentile* v. *Marcus*, 55 N. Y. S. 901). The interests of justice are not served by denying this defendant the right to present highly material evidence which directly contradicts the infant plaintiff's version of the way in which the accident happened, when it was the latter herself who misled defendant into believing such evidence did not exist. As long ago as 1861 the court in *Platt* v. *Munroe* (34 Barb. 291, 294) stated, "the books are full of exceptional cases, in which the development of truth and the promotion of substantial justice have been deemed sufficient reasons for granting new trials". This is one of those exceptional cases and accordingly a new trial should have been granted. Munder, Martuscello and Latham, JJ., concur; Benjamin, J., dissents and votes to affirm the interlocutory judgment and the order, with the following memorandum, in which Rabin, P. J., concurs: As noted by the majority, defendant does not contend that the verdict was against the weight of evidence, but urges only that its motion for a new trial on the ground of newly discovered evidence should have been granted by the trial court. In my opinion, there is no merit in that contention. Motions for a new trial on the ground of newly discovered evidence are addressed to the trial court's discretion; they are not favored because they tend to protract litigation; and parties seeking such new trials have a heavy burden of establishing their right to that relief (*Buckman* v. *Perry's Tax*, 24 A D 2d 913; 4 Weinstein-Korn-Miller, N. Y. Prac., par. 4404.27; 8 Carmody-Wait, 2d ed., New York Practice, § 62:22). To obtain that relief, the one seeking it must show, *inter alia*, that the new evidence could not have been discovered with proper diligence before the trial and that it is of such a nature that it probably would produce a different result (4 Weinstein-Korn-Miller, N. Y. Prac., pars. 4404.27, 4404.31; 8 Carmody-Wait, 2d ed., New York Practice, § 62:22). In my view, defendant has not met either of these requirements. More than two years before the trial, defendant learned, at a pretrial examination of the infant plaintiff, that immediately before the accident she had been playing ball with an unnamed friend across the street from the accident site. True, the infant plaintiff testified at that examination that her unnamed friend did not come onto defendant's premises with her to retrieve the ball, but the friend's presence at the scene was so close in time to the occurrence of the accident that reasonable diligence in preparing for trial obviously required that defense counsel seek her out and interview her. Yet defense counsel then did no such thing; he did not then ask the infant plaintiff who her friend was and where she lived; and he did not then make any other attempt to identify and locate her. On the first day of this three-day trial, the infant plaintiff disclosed the name of her friend and the street on which she had lived; and on the second day she testified that she had tried to locate her friend and produce her as a witness, but her friend had moved and that she, the infant plaintiff, had been unable to find her. At no time during the trial did defense counsel claim surprise and move for a mistrial; nor did he

request a short adjournment so that he could try to locate the friend and subpoena her as a witness, even though at trial the infant plaintiff testified that her friend had gone onto defendant's premises after the accident and had then gone for help. Not until after the jury had found for plaintiffs did defense counsel decide that he needed the infant plaintiff's friend as a witness; and he then, for the first time, bestirred himself and made a search for her. On this record, I do not believe defendant has made the required showing of due diligence in attempting to discover and procure the friend's testimony before or even during the trial. Nor is the proffered new evidence of such a nature that it would probably produce a different result. The record shows that the 1,000 pound die was not attached to the base on which it rested; that two girls, about the infant plaintiff's size, could knock it over by rocking it; that there were no signs warning children to keep off defendant's premises; that defendant's president had to chase children from the premises every day because he was afraid the dies might fall; that part of defendant's premises was on a public sidewalk; and that the stone involved in this accident was in that part of the premises that was on the sidewalk. The infant plaintiff testified that the die was twisted half off its base and fell on her foot though she had not touched it. The proffered newly-discovered evidence was a statement by her friend that they "sat down and began to fools [sic] around with some headstone [sic] and one of the headstone [sic] fell on * * * [the infant plaintiff's] foot." On the facts in this case plaintiffs were entitled to recover against defendant on either of those versions of the accident. The jury had a right to believe the infant plaintiff's testimony that the die was twisted half off its base and in that position was so precariously balanced that it fell on her even though she had not touched it (cf. *Basham* v. *Pennsylvania R. R. Co.,* 372 U. S. 699, revg. 11 N Y 2d 991; *Higgins* v. *Ruppert,* 124 App. Div. 530); if it so concluded, it had a right to find against defendant on liability, since (a) the stone was on a public sidewalk, (b) such stones were inherently dangerous because children could topple them or shift them off balance so they would later fall by themselves, (c) children had a right to be on the part of defendant's premises that was on the public sidewalk and (d) defendant had notice of the danger because it knew the stones could fall, be pushed over, or be twisted off balance, and had often chased children off its premises to prevent such occurrences and possible accidents (see *Tierney* v. *New York Dugan Bros.,* 288 N. Y. 16; *Nagle* v. *New York Edison Co.,* 281 N. Y. 727; *Boylhart* v. *Di Marco & Reimann,* 270 N. Y. 217; *Long* v. *City of Dunkirk,* 260 N. Y. 599; cf. *Meyers* v. *120th Ave. Bldg. Corp.,* 9 A D 2d 931). Indeed, the jury could well have found defendant liable on these facts even if the stone were not on a public sidewalk but was, instead, on defendant's own property, since on that property there was a known danger, but the property nevertheless was left open and accessible to children who often came on it to play (*Patterson* v. *Proctor Paint & Varnish Co.,* 21 N Y 2d 447, 450, 453). The jury would have the same right to find defendant liable if it believed the proffered new testimony of the infant plaintiff's friend that the headstone fell as they "sat down and began to fools [sic] around with some headstone [sic]", since a headstone that could be toppled by two seated children obviously was so precariously balanced that it constituted a danger to children who had a right to be there because it was on a public sidewalk. This would be so even if it required rocking by two standing children to topple it, in view of children's known propensity to play with such attractive objects (*Tierney, Nagle, Boylhart, Long, supra*); and, as previously noted, this would seem to be so even if the stone were on defendant's private prop-

erty, since the danger was known but the property was nevertheless left open and accessible to playing children (*Patterson, supra*). In sum, under either plaintiffs' version or the proposed new witness's version of the accident, a judgment for plaintiffs would be sustainable. The jury found for the infant plaintiff on her version of the accident; it probably would find for her on the proposed new witness' version; hence, defendant has not met its burden of showing that the newly-discovered evidence would probably produce a different result. As it has not made such showing and, moreover, has not shown due diligence in attempting to discover and produce the new testimony before the trial, its motion for a new trial was properly denied. I therefore vote to affirm.