J. LEROY WRIGHT, Warden *v.* DONALD J. HERZOG

[No. 58, October Term, 1943.]

*Decided November 10, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, GRASON, MELVIN, ADAMS, and BAILEY, JJ.

*William C. Walsh, Attorney General,* and *J. Edgar Harvey, Assistant Attorney General,* with whom was *Hall Hammond, Deputy Attorney General,* on the brief, for the appellant.

*James J. Laughlin* for the appellee.

GRASON, J., delivered the opinion of the Court.

This is a *habeas corpus* case. The lower court, in deciding it, held Section 80 of Article 41 of Flack's Annotated Code of Maryland, 1939, to be unconstitutional. Under Section 16 of Article 42 of the Code, the judge sitting below was required to transmit his written opinion and the papers in the case to this court for review.

Donald J. Herzog, on March 20, 1934, in the Criminal Court of Baltimore City, pleaded guilty to five indictments, four of which charged robbery with a deadly weapon and one larceny. In each of the robbery cases he was sentenced to a term of ten years in the Maryland Penitentiary and in the larceny case to one year in that institution; all of the sentences to run concurrently.

On June 15, 1937, he was released in custody of the Parole Commissioner, under a conditional pardon granted

by the late Governor Nice. Among the conditions upon which this conditional pardon was granted were:

1. "That the parolee will, on the 28th day of each month, make a full written report to the Parole Commissioner upon the form provided for that purpose. This report must be signed by the parolee personally, verified and signed by the Sponsor, and then forwarded immediately to the Parole Commissioner's office at Baltimore, Maryland."

2. "That the parolee will not violate any Federal, State or City law. (At the Parole Commissioner's discretion, any breach of the law may be regarded as a violation of parole.)"

3. "That the parolee will not change his place of residence or employment without first having obtained permission from the Commissioner, Secretary, or Parole Officer. If the change must be made before permission can be obtained, the parolee must notify the Commissioner as soon afterwards as is possible."

In August, 1941, Herzog committed two acts of forgery and on or about September 1st following left the State. He remained away until December, 1942, when he returned to Baltimore City. He was then arrested and on the 22nd day of January, 1942, Governor O'Conor revoked the conditional pardon and ordered him remanded to prison to serve out the term imposed by the court. Testimony was taken on September 10, 1943, before the Circuit Court for Prince George's County on his petition for writ of *habeas corpus*. In the petition he does not deny that he has broken the conditions of his pardon; nor assert that he has kept and performed them. In his testimony Herzog admitted he did not keep the Director of Parole and Probation advised as to his address; he did not make the monthly reports as he was required to do; and between the time of his arrest in December, 1942, and the date of the hearing in the *habeas corpus* proceeding, pleaded guilty in two cases in the Criminal Court of Baltimore City to what he believed "was termed false pretenses" and that these cases

arose out "of the issuance or utterance of the bogus check."

These conditions were typewritten, and read and signed by Herzog at the time the conditional pardon was issued in 1937. They are fair, reasonable and necessary, both for the good of the prisoner and the protection of society. They contain nothing that is arbitrary, unreasonable, or impossible. They could have been performed by any prisoner who was disposed to co-operate with the authorities and work to effectuate his rehabilitation.

There can be no question of the correctness and justness in the action of Governor O'Conor in rescinding this conditional pardon and remanding Herzog to prison. The question involved is one of technical law and turns on the point of whether under the Constitution of this State, or of the Federal Government, it was necessary for the Governor to give Herzog a hearing before he revoked the conditional pardon which had been granted him.

The Constitution of this State, Article II, Section 20, provides that the Governor "shall have power to grant reprieves and pardons," except in cases specified, upon giving the notice therein provided. Under it Chapter 500 of the Acts of 1914 was enacted. Section 7C of that Act, among other things, provides that the Governor, "on giving such notice * * * may pardon any person, convicted of crime, on such conditions as he may prescribe." Section 7D provides that in case of the issuance of a conditional pardon to any person "the Governor, in the absence of any provision to the contrary expressed therein, shall be the sole judge of whether or not the conditions of said pardon have been breached, and the determination by the Governor, that the conditions of such pardon have been violated by the person receiving the same, shall be final and not subject to review by any court of this State." And Section 7E provides for the recommitment to prison of those having been found by the Governor to have breached the conditions of their

pardon. These sections are codified as Sections 79, 80 and 81 of Article 41 of the Code, 1939, and have been the law since 1914. The Legislature, by the Acts of 1939, Chapter 406, revised the law regarding parole and probation, but did not change in any way whatsoever the sections of the Act of 1914 referred to. Section 55-A of Chapter 406 of the Acts of 1939, codified as Section 84 of Article 41 of the Code, provides that before the Director of Parole and Probation rescinds a parole issued to a prisoner he shall "conduct at any convenient place a hearing to determine whether or not the parole issued to such paroled prisoner shall be revoked." Therefore, the power of the Director of Parole and Probation to revoke a parole cannot be exercised until after a hearing.

In the sections of the Code referred to, regulating the Governor's action in revoking a conditional pardon, there is no requirement whatever that he shall conduct a hearing before he revokes a conditional pardon. In the case of the Director of Parole and Probation he acts under the law regulating parole and probation, to wit, the Acts of 1939, Chapter 406, while the Governor acts under a constitutional power, and the Acts of 1914, Chapter 500. Under the parole system a hearing is necessary before a parole can be revoked. Under the pardoning power, neither the Constitution nor statute law compels the Governor to hold a hearing before a conditional pardon is revoked. He is empowered under Section 80 of Article 41 of the Code to determine whether conditions of a pardon have been violated and his action thereon cannot be reviewed by the courts. Therefore, the prisoner was without right to a hearing by the Governor in this case, unless such a hearing was demanded by due process of law.

On this question the authorities throughout the country are divided. In a number of States, however, where the law does not require a hearing before revocation of a conditional pardon and where the situation is similar to the condition of the law in this State, it has been held that none is required. In Alabama a statute provided

that "upon the failure of any convict to observe the conditions of his parole, to be determined by the governor, the governor shall have authority to direct the rearrest and return of such convict to custody." Code, Ala, 1896, Sec. 5462. It was held constitutional and that the Governor might summarily revoke the pardon and return the parolee to prison. *Fuller v. State,* 122 Ala. 32, 26 So. 146, 147.

In Kansas, under a statute providing that a parole might, without notice or hearing, be revoked by the court on information that its terms had been violated and the prisoner remanded, it was held not to violate the due process clause and was held constitutional. *Ex parte Patterson,* 94 Kan. 439, 146 P. 1009.

In Nebraska a conditional parole was revoked by the Governor for violation of the conditions imposed. The statute did not require the Governor to give notice of his intention to revoke the parole nor to give the prisoner a hearing. It was held not to violate due process and to be constitutional. *Owen v. Smith,* 89 Neb. 596, 131 N. W. 914.

In *Ex parte Paquette,* 112 Vt. 441, 27 A. 2d 129, 131, a Vermont case, a prisoner was released by the Governor under the provision of a statute. It was held: "By his acceptance of the pardon, the petitioner voluntarily submitted himself to the conditions stated in it and was bound by them," and that "the terms of pardon and the statute in pursuance of which it was granted gave the petitioner no right to notice and hearing as a condition precedent to his arrest and recommitment." A number of cases are cited to support the position taken in that case, and it was held "there was no violation of his constitutional rights." Cases cited, holding to the contrary, were stated to be "opposed to the great weight of authority" and were not followed by that court. Among the cases that were not followed in that decision was *Fleenor v. Hammond,* 116 F. 2d 982. The following cases support the authorities quoted: *People ex rel. Romain v. Parole Commission,* 191 N. Y. S. 410; *People ex*

*rel. Hannon v. Warden,* 205 N. Y. S. 235; *Arthur v. Craig,* 48 Iowa 264, 30 Am. Rep. 395; *Ex parte Horine,* 11 Okl. Cr. 517, 148 P. 825; *In re Tobin,* 130 Cal. App. 371, 20 P. 2d 91; *Stephens v. Bertrand,* 151 Kan. 270, 98 P. 2d 123; *People v. Dudley,* 173 Mich. 389, 138 N. W. 1044.

We are of the opinion that the weight of authority sustains the validity of statutes which authorize the revocation of conditional pardons without requiring a hearing and that Section 80 of Article 41 of the Code is constitutional.

This does not mean that the Governor can exercise his power arbitrarily or upon whim, caprice, or rumor. When the Governor acts in a case like this the law presumes that he has dealt with the matter carefully and fairly. When a prisoner is recommitted the matter will be final, unless it is reopened by *habeas corpus* proceeding. A petition for the writ should deny breach of conditions upon which the pardon was issued, and with clearness and precision state facts which on their face show that the action in revoking a conditional pardon was capricious and arbitrary. Without such allegations the writ should not issue. And unless such facts are sustained by clear proof the prisoner should be remanded.

In the Fleenor v. Hammond case, *supra* (116 F. 2d 987), relied upon by appellee, the Governor of Kentucky, without first giving the prisoner a hearing, revoked a pardon for breach of conditions upon which it was granted. The case was remanded "with instructions to permit the appellant to amend his petition, if he is able to do so, to allege unequivocally that if granted a hearing he could demonstrate thereat that the conditions of the pardon have been fully complied with and that none of them have been breached. If and when that is done the appellant will be discharged."

The court in that case concluded: "* * * The petitioner's right to his freedom under the terms of the pardon could not be revoked without such hearing as is the generally accepted prerequisite of due process, if the exercise of such power by the Governor is challenged by

unequivocal allegations that the petitioner has complied with the conditions of the grant."

With this statement of the law we agree. To revoke a conditional pardon for no cause at all would be a cruel and arbitrary act, and hence unlawful. Certainly Section 80 of Article 41 of the Code, 1939, can be administered without capriciousness and without arbitrariness, and the Governor's action will always be presumed to be fair. A law cannot be said to be unconstitutional because it can be administered in an arbitrary manner, but when an act done under a law is arbitrary and capricious it is done without legal sanction and is void.

One suffering the penalty of imprisonment by such an unconstitutional act can challenge it by a writ of *habeas corpus,* and, in a court of justice, prove it to be what it is. But in all such cases as this the prisoner must show injury; and, where he does not allege that he has not violated the conditions of his pardon, he has not shown injury nor deprivation of a constitutional right. In such circumstances his case would be moot and not entertained.

The prisoner should be remanded to the Maryland House of Correction to serve out the unexpired term imposed by the Criminal Court of Baltimore City.

> *Order reversed, cause remanded for proceedings in accordance with this opinion.*