JOSEPH H. A. ROGAN, ET AL., *v.* ROBERT W. COOK

[No. 116, October Term, 1946.]

*Decided April 18, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Richard W. Case, Assistant Attorney General,* with whom was *Hall Hammond, Attorney General,* on the brief, for the appellants.

*George B. Woelfel* for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by the defendants from an order granting a writ of mandamus directing the defendants to reinstate the plaintiff as assessor for Anne Arundel County. In 1943 plaintiff was appointed assessor by the County Commissioners of Anne Arundel County under Art. 81, sec. 180, as amended by the Act of 1943, ch. 717, 1943 Supplement; section 180 was further amended, by a provision not now material, by the Act of 1945, ch. 1022. In 1935 plaintiff was appointed assistant supervisor of assessments for the county, in 1944 deputy assessor. On May 2, 1946, he was removed from his position by defendants. He was first appointed in 1935 under the Act of 1916, ch. 629, Code of 1924, sec. 262, Act of 1929, ch. 226, sec. 171. The Acts of 1916 and 1929 provided that "for incompetency or any other cause, the State Tax Commission shall have the authority and power to dismiss and discharge any of such County Assessors." The Acts of 1943 and 1945 provide that "each assessor shall perform his duties under the direction of the Supervisor of Assessments, and shall hold his position during good behavior, subject only to removal by the State Tax Commission, after hearing, for incompetency or other cause." It may be doubted whether the quoted provisions of the Act of 1943 added anything regarding tenure that was not implied in the Acts of 1916 and 1929. *Street Commissioners of Hagerstown v. Williams,* 96 Md. 232, 53 A. 923. The Act of 1943 did require submission of lists of applicants by the County Commissioners to

the State Tax Commission and interviewing, examination and grading of the applicants, and certification of the lists and the respective grades to the County Commissioners, by the Commission before appointment. In effect, section 180 establishes, to a limited extent, a merit system for assessors.

On April 15, 1946, plaintiff filed a certificate of candidacy for the office of Treasurer of Anne Arundel County, subject to the Democratic primaries. On April 17th or 18th he went to Baltimore to the Commission's office, "because a few days after I filed for Treasurer it was rumored around the Court House that I would be fired because of my filing for public office. I thought the proper authority to go to would be the State Tax Commission." In the absence of the members of the Commission he talked with the Secretary, Mr. Ward, told Ward it was rumored about the Court House that he was to be "fired," asked what the charges were and was told Ward knew of none, and none had been filed. He did not tell Ward, and Ward did not know, that he had filed a candidacy for public office. Mr. Ward says, plaintiff was very vague in his replies as to why he asked the question about charges; Ward learned of plaintiff's candidacy in a weekly newspaper on April 19th and brought it to the attention of the Commission the next week. Plaintiff never told any member of the Commission he was going to file. About the time of plaintiff's visit to Ward, he consulted counsel about the rumor that he was to be fired. The day after or several days after that visit plaintiff's counsel called Mr. Ward by telephone, and says he told Ward he would represent plaintiff in the event of any charges being filed against plaintiff, and asked Ward to send him a copy of the charges in writing, and Ward said he would. Mr. Ward remembers talking with plaintiff's counsel but does not recall such a conversation.

On the instructions of the Chairman of the Commission, the Chief Supervisor of Assessments, Mr. Mueller, on April 29th went to Annapolis to see plaintiff. The Supervisor of Assessments for Anne Arundel County,

Mr. Maddox, had told plaintiff Mueller would be down and wanted to talk with plaintiff. Mueller says he told plaintiff the Commission "frowned upon any of its supervisors or assessors attempting to run for any public office"; they had had some experience in the past of that sort of thing; Mueller told plaintiff of specific instances, in which it had not been permitted; under those conditions the best thing Mueller thought plaintiff could do would be to resign; if plaintiff didn't intend to submit his resignation, Mueller would be required to file charges against him; plaintiff told Mueller that if the Commission wanted him to resign, they would have to put it in writing; Mueller said, "Well, then I hereby summons you" to be at the Commission's office on May 1st at 2 P. M. "for a hearing." The conversation had all been about plaintiff's running for public office.

On May 1st the Commission, because it was required to appear before the Legislative Council, was unable to hold the hearing. When plaintiff appeared as a result of Mr. Mueller's summons, Mr. Ward told him to report back at eleven o'clock the next day, which he did. The official minutes of the hearing on May 2nd, prepared by the Secretary, Mr. Ward, are as follows: "May 2nd, 1946. The Commission held a hearing today on the charges made by the Chief Supervisor of Assessments, H. Gerald Mueller against M. Robert Cook, County Assessor of Anne Arundel County. Mr. Mueller charged that Mr. Cook should be removed as a County Assessor because of his recent filing as a candidate for County Treasurer of Anne Arundel County. Mr. Mueller stated in his opinion no assessor could campaign for public office in his county and at the same time do justice to his duties as an assessor, stating a number of reasons for this contention on his part. The hearing was held before the full Commission. Present, in addition to the Commission, were the Secretary, the Chief Supervisor of Assessments, the Supervisor of Assessments in Anne Arundel County, and Mr. Cook, all of whom participated in the discussion. Mr. Rogan, the Chairman, at the out-

set explained the cause necessitating the hearing as provided for by Article 81, section 180 of the Code, which section gives the Commission the right and authority to remove any county assessor 'after hearing, for incompetency or other cause.' Mr. Cook was given full opportunity to state and defend his position in the matter, and readily admitted that he did not consult the Supervisor of Assessments of Anne Arundel County, or any one connected with the State Tax Commission, before filing his candidacy for County Treasurer on the evening of April 15, 1946. There was a full discussion of the improprieties of an assessor running and campaigning for public office, and, at the same time, conducting his work and performing his duties as an assessor, without causing embarrassment and criticism to himself, the County Commissioners and the State Tax Commission. Mr. Cook, nevertheless, stated that he could not see anything wrong with his running for public office and, at the same time, performing his duties as county assessor. He further stated that he would not resign as county assessor. After proper deliberation, a majority of the Commission decided to remove Mr. Cook as assessor, effective immediately, Mr. Harrington not voting, for reasons stated by him. Mr. Cook was then called before the Commission and notified of his removal, and the Secretary was instructed to notify the County Commissioners of the Commission's action, and to request them to submit a list of all of the applicants for the position of County Assessor, to succeed Mr. Cook."

The Secretary testifies to the accuracy of the minutes as a summary of what occurred. The Chairman's testimony is to the same effect. Plaintiff does not recall that Mueller, at Annapolis, went into the policy of the State Tax Commission about allowing an assessor to run for public office and the improprieties of it; he says, he had no idea that there was any such policy, that an assessor was forbidden to run for public office; Mueller never suggested that he resign. He says the hearing before the Commission on May 2d took a very short time; he was

before the Commission, he would say roughly, twenty minutes; at the hearing he did not request the Commission to allow him to have counsel represent him at the hearing, because he didn't know it was a hearing; he didn't bring up the fact that he had not received proper notice to come to Baltimore, but he didn't know what he was being asked to Baltimore for, no one had told him; at the hearing he was given an opportunity to talk.

No written charges were filed against plaintiff. The Commission did not give him an opportunity to withdraw his candidacy; nor did he ask such an opportunity. He says, rather than lose his position, he would have withdrawn his candidacy for public office; it was too late to withdraw on May 2d; he filed not knowing he was violating any rule. The last day for withdrawal was May 1st.

The chairman of the Commission testifies that there is no written rule, but there is an administrative policy of the Commission relating to assessors running for public office, a policy under his predecessors and himself not to permit assessors holding public office or being members of a State Central Committee or engaging in the insurance business or doing anything else that would be an embarrassment to the Commission; that plaintiff was before the Commission at least an hour, and he explained to plaintiff in detail that plaintiff was responsible to the Commission and how the Commission felt about assessors running for public office and at the same time assessing their neighbors' property; plaintiff's argument was that he could do it. Mr. Ward, Secretary to the Commission since 1931, testified that the custom of the Commission is to keep the assessors out of politics, as far as it is humanly possible, and the practice of the Commission and the policy of the Commission since 1931 has been to frown upon any assessor becoming actively engaged in political activities. He mentioned specific instances in past years in which this policy had been pursued.

Plaintiff asserts that he was "fired" because he filed on the "wrong" ticket; that in 1940 an Anne Arundel

assessor was county campaign manager and treasurer in a senatorial primary contest, and for some years (not specified) the same and another assessor had been active political leaders or "bosses"; that a member of the Commission recently was a candidate for Congress in the primaries.

This appeal presents two questions: (1) Was plaintiff's candidacy for public office sufficient cause for removal? And (2), if so, did plaintiff receive adequate notice and hearing?

No constitutional question is involved. Plaintiff had an unquestioned right to run for public office. But, as Mr. Justice Holmes said many years ago, a man "may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." *McAuliffe v. City of New Bedford,* 1892, 155 Mass. 216, 220, 29 N. E. 517. If the tenure of assessors is to be made independent of political vicissitudes, the incongruity of soliciting one's neighbors' votes and assessing their property is too clear for elaboration.

Tenure (a) during good behavior, (b) subject only to removal for cause, includes two essential elements. "The manifest purpose of the act was to create a police force not subject to change from the result of recurring elections, but with a tenure to be cut short only for cause." *Andrews v. Police Board,* 94 Me. 68, 46 A. 801, 803, quoted in *Street Commissioners of Hagerstown v. Williams,* 96 Md. 232, 238, 53 A. 923. Without such tenure, an assessor might be under political influence in the discharge of his duties. Without power of removal for cause, he might be so intrenched in his position that he could use it as a base for political activities. Both of these contingencies alike, the statute is designed to prevent.

The lower court stressed the fact that the Commission's policy was not embodied in a rule, held the policy lacking in definiteness, and asked whether it applied to stenographers or to a member of the Commission who ran for Congress. The statute is applicable to assessors,

not to stenographers. Nor does a member of the Commission hold office during good behavior or subject to removal for cause by his colleagues. Removal for "cause" is not limited to removal for violation of a rule of the Commission. Even when rules have been formulated and causes of removal specified in them, these causes are not the exclusive grounds of removal; the employee may be removed for other sufficient cause. *Dillon on Municipal Corporations,* 5th Ed. 1911, sec. 477, page 801.

If the Commission's alleged policy were a sham and a subterfuge to get rid of plaintiff for political reasons, we may assume it would not constitute sufficient cause for removal. There is no evidence that it was a sham or a subterfuge, or that the Commission had ever permitted other assessors to run on the "right" ticket or the "wrong" ticket and continue to hold their positions. Short of some such showing, recrimination or contributory negligence is no more a defense against removal for cause than it is against a criminal charge. Merit systems are not created perfect. Furthermore, the unfitness of an assessor becoming a candidate for public office and continuing to be an assessor is too manifest to require explanation or warning to plaintiff from the commission. We think, however, that plaintiff knew, when he made his first visit to Mr. Ward, that the Commission's policy was opposed to an assessor becoming a candidate for public office. At all events, he could readily have learned the Commission's policy by asking, before he filed or when he first went to see Mr. Ward.

We are also satisfied that plaintiff was removed after notice and hearing adequate in the circumstances, although ordinarily written charges and formal hearing would be, to say the least, better practice. He was removed because he became a candidate for public office. That fact was not, and is not, disputed. We hold that it was sufficient cause for removal. We also hold that plaintiff knew the purpose of Mueller's "summons" and of the "hearing" when he was before the Commission. He did not ask postponement in order to call witnesses

or to obtain the attendance of counsel. It would have been futile to do so, as he admitted, and now admits, the cause for his removal. He seems to have thought that, through silence on such points, he might find technical grounds for upsetting the Commission's action. Even if he had been removed without adequate notice and hearing, he could not be reinstated by mandamus, when his testimony shows that there was, and is, sufficient cause for removal. *Cf. Wright v. Herzog,* 182 Md. 316, 34 A. 2d 460.

*Order reversed, with costs, and petition dismissed.*