Argued November 22; reversed December 13, 1932; rehearing
denied January 10, 1933

## STATE *v.* CHARLESWORTH

(16 P. (2d) 1116, 17 P. (2d) 1104)

*Jay H. Stockman* and *John R. Latourette,* both of Portland (O. P. Coshow and John F. Conway, both of Portland, on the brief), for appellant.

*Barnett H. Goldstein,* Special Assistant Attorney General (Lotus L. Langley, District Attorney, of Portland, on the brief), for the State.

BELT, J.  Defendant was convicted of the crime of selling "in the course of repeated and continuing transactions" certain corporate securities without having obtained a permit so to do from the corporation commissioner of the state of Oregon.

John A. Charlesworth was the organizer and chief executive officer of the Pacific National Syndicate. On August 20, 1930, Corporation Commissioner McCallister issued a permit to the above corporation to sell $1,000,000 of its installment loan certificates. On April 29, 1931, Corporation Commissioner Mott wrote the following letter to the Pacific National:

"You are advised that Permit No. 5030 of the PACIFIC NATIONAL SYNDICATE authorizing the sale of $1,000,000 Accumulative Installment Loan Certificates, is today suspended for cause, and all rights thereunder cease as of this date.

"You are also advised that the following list of agents of the above mentioned company are suspended as of this date.

"(List of agents.)

"Very truly yours,

"(Sgd.)    JAMES W. MOTT,
"Corporation Commissioner."

Upon receipt of the above letter and after protesting to the corporation commissioner, the defendant wrote one of the company agents as follows:

"James A. McDonough,

"117 Martin Street,

"Ashland, Oregon.

"Completely disregard Mott's letter cancelling your license. Keep right on working. Will write you fully Monday.

"(Sgd.)   J. A. CHARLESWORTH."

The serious question in the case is whether the record discloses a suspension or revocation of the permit. It is clear that defendant participated in repeated sales of corporate securities after receipt of the letter from the corporation commissioner. But does such unregistered letter constitute an order of suspension or revocation within the meaning of the statute? It appears without contradiction that no order of suspension was ever entered in the records of the corporation commissioner. The sole document upon which the State relies to establish one of the essential elements of its case, viz., a suspension or revocation of the permit, is the letter above set forth.

Section 25-1316, Oregon Code 1930, provides that:

"Whenever it shall appear to the corporation commissioner that the holder of any permit issued by the corporation department for the sale of any security or securities is insolvent or conducting his or its business in such manner as to jeopardize the interests of creditors or investors, or shall fail, neglect or refuse to file any circulars, papers, statements, prospectuses, documents, or other advertising matter or reports, or to pay any of the fees required or provided by this act, without satisfactory reason therefor, or has committed any fraudulent transaction, or has violated any provision of this act, the commissioner may suspend or revoke such holder's permit,   *   *   *."

Whenever the commissioner has made a final order, the person aggrieved thereby may appeal to

the circuit court of Marion county (section 25-1310, Oregon Code 1930) "by serving upon the commissioner within 20 days after the date of the *entry of such order*" a written notice of such appeal. Thereafter it is the duty of the commissioner under the statute, upon demand, to certify and deliver to appellant a "transcript of the record and of all papers on file in his office affecting or relating to such order."

Section 25-1323, Oregon Code 1930, pertains to the records kept by the corporation commissioner and requires such officer to "keep as records of his office books showing all acts, matters and things done by him under the provisions of this act."

■ It is plain that the suspension or revocation of a permit by the corporation commissioner must be in accordance with the procedure specified in the above statutory provisions. Mailing by registered mail a copy of the order of suspension or revocation is essential to jurisdiction of the person. Furthermore, the statute contemplates that such order be entered of record as the time for serving notice of appeal to the circuit court must be within 20 days "after the date of the entry of such order." In the instant case, no order whatever was made or entered of record. In the event that defendant had appealed to the circuit court, what would the certified transcript of record have disclosed? Merely a carbon copy of a letter addressed to the Pacific National Syndicate. Under such state of the record, a motion to dismiss the appeal would undoubtedly have been allowed since no final order had been made. We have not before us a case of failure to enter a formal order, nor is it one of an order entered nunc pro tunc. It is a case in which no order was ever made. The latter does not meet the requirements of the statute. Such a construction would enable the corporation commissioner to deprive the person aggrieved of his

right of appeal. Respondent has cited no case—and we venture to assert there is none—holding that a carbon copy of a letter, which is merely secondary evidence, would be equivalent to a final order. As stated in *Re Estate of Stewart,* 110 Or. 408 (223 P. 727):

"Statutes providing for a particular kind of service are always strictly construed. It is necessary that the manner prescribed by a statute for acquiring jurisdiction of any cause be strictly followed."

The statute has vested the corporation commissioner with the power to suspend or revoke a permit without notice or opportunity to be heard. It is only by virtue of the right of appeal that the constitutional rights of the defendant are protected. Hence it is important that an order of suspension or revocation be entered of record to enable the permittee to prosecute an appeal and to have his day in court.

■ Defendant has also attacked the constitutionality of the "Blue Sky Law," but we see no merit in such contention. The same points were presented in *State v. Terwilliger,* post p. 372, this day decided, and held adversely to appellant. Indeed, it has been said in *State v. Gerritson et al.,* 124 Or. 525 (265 P. 422):

"It has been determined that the Blue Sky Law is constitutional both by this court and the Supreme Court of the United States where similar statutes from other states are involved."

In view of the conclusion reached, we see no need to review other assignments of error.

■ Since the record discloses no order by the corporation commissioner was ever made suspending or revoking the permit issued to the company of which defendant is an executive officer, it follows that the State has failed to prove one of the essential elements of its case and, therefore, the judgment of conviction must be reversed.

Petition for rehearing denied January 10, 1933

## ON PETITION FOR REHEARING
### (17 P. (2d) 1104)

■ BELT, J. It is charged that error was committed in holding there was no evidence of the entry of an order of suspension, since all of the evidence was not certified for review, and error can not be presumed. Referring to the bill of exceptions, we find the recital therein that "said testimony as set forth in said partial transcript therein fully sets forth the testimony relative to the subjects herein presented." From this recital we may reasonably assume that the evidence not included in the certified transcript was not material or relevant to the question as to whether there had been an order of suspension entered.

It is next argued that no order of suspension was necessary and that the letter of the corporation commissioner to the defendant was sufficient. This contention was answered to our satisfaction in the original opinion. Repetition would serve no good purpose.

Finally, it is urged that this court considered a question not presented in the trial court. While the objections were not as specific as they should have been, the defendant did, however, definitely urge that there had been a failure to comply with the plain mandatory provisions of the statute.

There is no disposition to dispose of this case on what counsel for the state designates as "hair splitting technicalities." The reversal of the judgment of conviction is based upon a failure to comply with the statute relative to the suspension or revocation of licenses. If to insist upon obedience to wholesome and salutary provisions of the law is technical, the writer pleads guilty.

The petition for rehearing is denied.