Submitted on briefs January 2, affirmed March 21, petition for
rehearing denied April 25, 1951

IN THE MATTER OF THE APPLICATION OF DOLORES D.
ANDERSON FOR A WRIT OF HABEAS CORPUS

ANDERSON *v*, ALEXANDER, AS WARDEN OF THE
OREGON STATE PENITENTIARY

229 P. 2d 633
230 P. 2d 770

*Bruce W. Williams* and *Joseph P. Meier,* of Salem, filed a brief for appellant.

*George Neuner,* Attorney General, and *Robert R. Carney,* Assistant Attorney General, of Salem, filed a brief for respondent.

BRAND, C. J.

Dolores D. Anderson filed in the circuit court of the State of Oregon for Marion County a petition for a writ of habeas corpus on behalf of her husband, James Quentin Anderson, who is confined in the penitentiary. Pursuant to the petition, the circuit court

ordered the issuance of the writ directed to George Alexander, the warden of the penitentiary. No writ appears in the record. However, we may presume that a writ was issued for the respondent Alexander filed his return wherein he stated that the writ had been directed to him by order of the court. The petitioner filed a reply to the return, against which a demurrer was filed but upon which no order was entered. The case was tried upon the issues made by the pleadings. The evidence consisted of six exhibits introduced by the respondent, together with a stipulation of facts. No other testimony or evidence was offered by either party and the case as presented here and in the circuit court raises questions of law only. The trial court denied the application for the writ and remanded James Quentin Anderson to the custody of the warden of the penitentiary. The petitioner appeals.

The return of the warden of the penitentiary alleges the following facts which are expressly admitted by the replication of the petitioner: James Quentin Anderson was duly convicted of the crime of manslaughter and sentenced by the circuit court of Klamath County to serve an indeterminate but maximum term of ten years in the penitentiary. He entered the penitentiary on April 23, 1941, by virtue of said sentence. On the same day Anderson escaped from the penitentiary but was apprehended and returned thereto and in connection with said escape he was indicted and pleaded guilty to the charge of taking and using an automobile without authority and was sentenced to one year in the penitentiary, said sentence to commence at the expiration of the term limited by the original sentence.

On December 22, 1945, Anderson was paroled from

the state penitentiary by the order of the State Board
of Parole and Probation. The conditions of the parole
were stated in the instrument and were accepted by
Anderson. On July 22, 1947, the State Board of Parole
and Probation issued an order revoking the parole
and directing the return of Anderson to the peni-
tentiary. On July 31, 1948, the State Board of Parole
and Probation issued its order whereby it authorized
the superintendent of the Oregon State Penitentiary
to allow Anderson "to go upon parole outside the
penitentiary buildings and enclosure, subject to the
following conditions: * * *". Among the eighteen
conditions upon which the parole was granted were
the following:

"1. That this parole is granted to and accepted
by the parolee subject to all its terms and conditions
and with the understanding that the State Board
of Parole and Probation may at any time, in case
of violation of the terms of the parole, cause the
parolee to be returned to the said institution to
serve the full maximum sentence or any part there-
of.

"2. That the parolee shall be under the legal
custody and control of the Director of Parole and
Probation of the State.

"* * *"

Other conditions imposed upon the parolee the duty
of making monthly reports, conducting himself as a
law-abiding citizen, abstaining from the use of intoxi-
cants and the like. At the bottom of the order of
parole is the following statement signed "James Q.
Anderson":

"I have read, or have had read to me, and fully
understand and accept the conditions, regulations
and restrictions under which I am being released
on parole. I will abide by and conform to them

strictly, and fully understand that my failure to do so may result in revocation of my parole.''

The parole became effective on August 4, 1948. According to the undisputed evidence, the State Board of Parole and Probation on September 13, 1949, issued a ''Revocation of Parole'' which reads in part as follows:

> ''WHEREAS, the said James Quentin Anderson has violated the terms of his parole and the State Board of Parole and Probation, exercising its discretion, deems it for the best interests of society and the parolee that he be returned to the custody of the Warden of the Oregon State Penitentiary, there to remain not to exceed his maximum sentence or until the further order of the Board;''

Pursuant to the further provisions of the order, Anderson was returned to the penitentiary.

At the trial in the circuit court in the instant proceeding the following additional facts were stipulated:

''I

''That James Quentin Anderson while on parole from the Oregon State Penitentiary was on or about September 9, 1949, apprehended by certain Oregon state police officers and lodged in custody in the Klamath county jail in Klamath Falls, Oregon, pursuant to the authority of the Oregon State Board of Parole and Probation; and

''* * * *

''III

''That there was no notice or opportunity to be heard granted to James Quentin Anderson before the Oregon State Board of Parole and Probation as to why his parole should or should not be revoked, and that he was not at any time heard before any judicial officer of the State of Oregon on this question; and

## "IV

"That James Quentin Anderson was soon thereafter, namely on September 15, 1949, returned to the confines of the Oregon State Penitentiary and is still so confined."

From the brief of the petitioner we read the following:

"The sole question to be determined upon this appeal is whether the measure of liberty granted a convict by his parole carries with it the constitutional guaranty against the deprivation of the same without due process of law, an essential element of which is an opportunity to be heard."

The respondent more accurately states the question as:

" * * * whether or not a person under parole from the Oregon State Penitentiary has either a statutory or constitutional right to a hearing before the Board of Parole and Probation prior to the revocation of his parole."

"The state board of parole and probation shall be charged with the duty of supervising all persons placed on probation or released from the state penitentiary on parole or conditional pardon and all persons released on parole, probation or conditional pardon from other states and residing in the state of Oregon; of making such investigations as may be necessary; of determining whether violation of conditions of parole, conditional pardon or probation exists in specific cases, and of preparing a case history record of the prisoners to determine if they should be paroled or should be released on probation." O.C.L.A., § 26-2304.

O.C.L.A., § 26-2305 as amended by Laws 1949, chapter 569, provides in part as follows:

"The state board of parole and probation shall have power to establish rules and regulations under

which any prisoner \* \* \* who now is or hereafter may be confined in \* \* \* the state penitentiary, may be allowed to go upon parole outside the institution, but to remain while on parole in the legal custody and under the control of the board and subject to being taken back into confinement at the discretion of the board. \* \* \*"

O.C.L.A., § 26-2306 as amended by chapter 386, Laws 1941, requires various officers to furnish to the Board of Parole and Probation information concerning the convicted person.

O.C.L.A., § 26-2307 requires the Board from time to time to consider all information regarding the convicted person. That section provides further:

"\* \* \* Good conduct and efficient performance of duties assigned in the state penitentiary will be factors considered by the board in granting parole. However, no prisoner shall be paroled unless it is the opinion of the board that, within a reasonable probability, such prisoner will, after parole, remain outside the institution without violating the law and that such release is not incompatible with the welfare of society."

O.C.L.A., § 26-2308 is as follows:

"The state board of parole and probation, in releasing a person on parole, shall specify in writing the conditions of his parole, and a copy of such conditions shall be given to the person paroled. Whenever the board finds that a prisoner has violated the conditions of his conditional pardon, parole or probation, or whenever the board has been advised in writing by the governor that the said prisoner has violated the terms of a conditional pardon, the written order of the board shall be sufficient warrant for any law enforcement officer to take into custody such person, and it hereby is made the duty of all sheriffs, police, constables,

parole and probation officers, prison officials and other peace officers to execute such order. From and after the cancellation or revocation of the parole, probation or conditional pardon of any convicted person, and until his return to custody, he shall be considered a fugitive from justice. Such prisoner so recommitted must serve out his sentence, and the time during which such prisoner was out on parole shall not be deemed a part thereof, but nothing herein contained shall prevent the state board of parole and probation from again paroling such prisoner at its discretion."

O.C.L.A., § 26-2302 creates the office of Director of Parole and Probation and provides in part as follows:

"* * * He shall have power, in accordance with the rules and regulations or directions of the state board of parole and probation or the governor, as the case may be, to retake and return persons to the institution, whether in or out of the state, whenever they have violated the conditions of their parole, probation or conditional pardon. * * *"

Additional provisions concerning the powers and duties of the Director of Parole and Probation were enacted by the Laws of 1945, Chapter 265, which provisions have been codified as Sections 26-2308.1 and 26-2308.2. They are as follows:

"In addition to the powers and duties set forth in section 26-2302, O.C.L.A., the director of parole and probation shall have power and is authorized to order the arrest and detention of any person then under the supervision or legal custody of the state board of parole and probation upon being informed and having reasonable grounds to believe that such person has violated the conditions of his or her parole, probation or conditional pardon. Any order so issued by said director shall constitute full authority for the arrest and detention of such per-

son and all the laws applicable to warrants of arrest shall apply to such orders.'' O.C.L.A., § 26-2308.1. (Supp.)

"Upon issuing an order for the arrest and detention of any person under the provisions of this act, the director of parole and probation shall proceed immediately to investigate for the purposes of ascertaining whether or not the terms of the parole or probation or conditional pardon have been violated. Within not more than 15 days after the issuance of any such order the detained person's parole, probation or conditional pardon shall either be revoked as provided by law or such person shall be released from detention.'' O.C.L.A., § 26-2308.2. (Supp.)

■ The case presents two questions; one of statutory authority and the other of constitutional right. There is a well-recognized rule that the court should, whenever possible, so construe legislative enactments as to avoid any construction which would render an act unconstitutional. Since the decision on the constitutional issue might have a bearing upon the construction of the statutes in the case at bar, we will, in this instance, consider the constitutional issue first. See 12 Supreme Court Digest Annotated, Statutes, Sections 106-107, citing many cases.

The petitioner relies upon cases from other jurisdictions which hold that licenses to practice a profession, trade or occupation confer valuable rights which cannot be revoked without complying with statutory procedural requirements and giving to the licensee notice and such a hearing as will satisfy the requirements of due process of law, either before a court or before an authorized administrative body. *Northern Cedar Co. v. French,* 131 Wash. 394, 230 P. 837; *Gilchrist v. Bierring,* 234 Iowa 899, 14 N. W. 2d 724;

*People v. McCoy,* 125 Ill. 289, 17 N. E. 786. We recognize the principle stated and the rule will not be questioned here. *Portland v. Traynor,* 94 Or. 418, 183 P. 933, 186 P. 54; *State v. Charlesworth,* 141 Or. 290, 16 P. 2d 1116, 17 P. 2d 1104; *State ex rel. Peterson v. Martin,* 180 Or. 459, 176 P. 2d 636. Whether the foregoing rule has any application to the revocation of a parole can be determined only after considering the nature of the statutory system of parole and the status of a parolee under that system. This we shall now consider.

■ The procedure under the statute creating and defining the powers of the State Board of Parole and Probation is in marked contrast to the earlier system under which paroles were granted and revoked by the sentencing court or by the governor. The courts were formerly vested with the power to parole prisoners convicted of the violation of the criminal laws of the state. O.C.L.A., § 26-1230. Parolees remained under the supervision of the court. O.C.L.A., § 26-1231. It was made the duty of the court or of any designated prisoners' aid society "as far as possible" to keep in communication with all prisoners under parole. O.C. L.A., § 26-1232. It was further provided that in the event of violation of the conditions upon which it was granted, a parole might be revoked "with or without notice to such prisoner" and "by order of said court". O.C.L.A., § 26-1233. See also O.C.L.A., §§ 26-1234, 26-1235, 26-2313. The power expressly granted to suspend the imposition or execution of sentence and to grant probation remains in the courts. O.C.L.A., § 26-1224. But all of the above-mentioned sections which relate to bench paroles have been repealed by Chapter 186, Laws 1947. In place of the system where-

by parolees remained under supervision of a court which traditionally acts only after hearing, the legislature has adopted a system of statewide parole and probation. A state board of parole and probation is created. Acting under appointment of that board, a director of parole and probation serves as executive and administrative agent of the board and as chief parole and probation officer. It is his duty to keep records of, and require reports from, parolees or prisoners having received conditional pardons. O.C. L.A., § 26-2302. The director is the head of a staff of assistants appointed "on the basis of their personal qualifications". O.C.L.A., § 26-2303. The State Board of Parole and Probation is charged with the making of "such investigations as may be necessary", and "of determining whether violation of conditions of parole . * * * exists in specific cases", and of preparing case histories of the prisoners. O.C.L.A., § 26-2304. The Board is authorized to establish rules and regulations under which parole may be granted and whereby a "prisoner" may be allowed to go upon parole "outside the institution, but to remain while on parole in the legal custody and under the control of the board and subject to being taken back into confinement at the discretion of the board". O.C.L.A., § 26-2305. Under the provisions of O.C.L.A., §§ 26-2308.1 and 26-2308.2 (Supp.) the director is charged with additional duties of investigation for the purpose of ascertaining whether or not the terms of a parole, probation or conditional pardon have been violated. The present statutes envision a comprehensive system whereby a prisoner on parole shall no longer be subject to the supervision of a court whose functions are judicial rather than administrative and whose facilities

for investigation and prisoner-guidance are of necessity limited, but rather shall be under the active administrative supervision of trained officials who are entitled, under the statutes, to the benefit of reports from the sentencing judge, the prosecuting attorney and the arresting agency concerning the convicted prisoner's crime and "any other information which they may have" concerning him. O.C.L.A., § 26-2306, as amended by Laws 1941, Chapter 386. Clearly, in determining whether there has been a violation of the conditions of a parole and in exercising discretion on the issue of the revocation of a parole, the statutes contemplate that the Board shall be guided by all of the mass of information which shall have become available to it under the administrative system. The status of the prisoner is indicated by the provision that from and after the cancelation or revocation of the parole and until his return to custody, the prisoner "shall be considered a fugitive from justice." O.C.L.A., § 26-2308.

In *Fehl v. Martin*, 155 Or. 455, 64 P. 2d 631, the petitioner brought habeas corpus, contending that the term of his sentence in the penitentiary had expired. From an opinion concurred in by three justices of this court, we quote:

"The numerous cases where the most dastardly crimes have been committed in this and other states by persons under parole or pardoned before the expiration of their terms shows the necessity of using great care and caution in the exercise of the pardoning power. In all such cases, it is not the liberty of the criminal but the safety of the public which should first be considered."

Justice Bailey, in a scholarly concurring opinion said:

"In the instant case the governor has issued a conditional parole to Fehl, which has by him been accepted. Under the law as here interpreted Fehl is not entitled to his freedom as a matter of right until he has served the sentence of not exceeding four years imposed upon him by the trial court."

In *People v. Strassheim*, 242 Ill. 359, 90 N.E. 118, the court said:

"Undoubtedly a prisoner on parole is still in the legal custody of the warden (Ughbanks v. Armstrong, 208 U. S. 481, 28 Sup. Ct. 372, 52 L. Ed. 582), and it is so provided in the parole act and the contract which the relator entered into. The Supreme Court of Massachusetts, in Oliver v. Oliver, 169 Mass. 592, 48 N.E. 843, which was a suit for divorce, held that a person sentenced to the state prison for not less than three nor more than six years, who might be allowed his liberty by the prison commissioners, with the approval of the Governor and council, at any time after the expiration of the minimum term, was under sentence for the maximum term; and under our parole act a person sentenced to the penitentiary is a *prisoner* until his final discharge. * * *" (Italics ours.)

In *Ughbanks v. Armstrong*, 208 U.S. 481, 52 L. Ed. 582, speaking of paroles granted by the governor of a state, the United States Supreme Court said:

"* * * The act in question provides for the granting of a favor to persons convicted of crime who are confined in a state prison. * * * Even after the convict is at large by virtue of the parole granted, he is still deemed to be serving out the sentence imposed upon him, and he remains technically in the legal custody and under the control

of the governor, 'subject at any time to be taken back within the inclosure of the prison from which he was permitted to go at large, for any reason that shall be satisfactory to the governor, and at his sole discretion; and full power to retake and return any such paroled convict to the prison from which he was permitted to go at large is hereby expressly conferred upon the governor.' Act of 1903, § 5, supra."

In *Lovelace v. Commonwealth,* 285 Ky. 326, 147 S.W. 2d 1029, the question at issue was the constitutionality of a statute authorizing courts to suspend the pronouncing of sentence and place a defendant on probation. The court said:

"* * * Probation relates to action taken before the prison door is closed—before final conviction, while parole relates to action taken after the door has been closed. A parole partakes of the nature of a pardon, for it suspends the execution of a penalty already imposed. * * *"

■ The judicial power of a court which acts on notice and hearing to suspend the pronouncement of sentence and award probation or thereafter to revoke the probation and pronounce sentence is clearly distinguishable from the power of an authorized administrative body to grant or revoke a parole. When a court suspends the pronouncement of sentence, the judicial process has not been completed. It remains in a state of suspense; not so in the case of a prisoner who has been sentenced and imprisoned.

■ Again, there is a valid distinction between a pardon and a parole. In *Commonwealth v. Cain,* 345 Pa. 581, 28 A. 2d 897, the court said:

"* * * There is a radical difference between a pardon and a parole. A pardon is the exercise of the sovereign's prerogative of mercy. It com-

pletely frees the offender from the control of the state. It not only exempts him from further punishment but relieves him from all the legal disabilities resulting from his conviction. It blots out the very existence of his guilt, so that, in the eye of the law, he is thereafter as innocent as if he had never committed the offense: Diehl v. Rodgers, 169 Pa. 316, 319, 32 A. 424, 425, 47 Am. St. Rep. 908; Commonwealth v. Quaranta, 295 Pa. 264, 273, 145 A. 89, 93; Commonwealth v. House, 10 Pa. Super. 259, 264, 265. A parole, on the other hand, does not obliterate the crime or forgive the offender. It is not an act of clemency, but a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls. It does not set aside or affect the sentence; the convict remains in the legal custody of the state and under the control of its agents, subject at any time, for breach of condition, to be returned to the penal institution. * * *

" * * * It is urged that the granting of a parole is a judicial function and therefore the power to parole cannot be entrusted to an executive or administrative body. This contention also has been uniformly rejected in other jurisdictions, where the constitutionality of statutes has been sustained vesting the power of parole in state boards (which now exist in some form or other in at least half the states of the Union) or in boards of prison commissioners or managers of reformatories. The power to grant paroles is not inherent in courts; Pennsylvania courts never had such power until it was given to them by the Act of June 19, 1911, P. L. 1059, 61 P. S. § 314, and then only with respect to prisoners in county jails and workhouses. What the legislature thus gave it can take away again in whole or in part and vest in some other agency of government. The legislature has exclusive power to determine the penological system of the Commonwealth. * * * It may therefore establish a parole system by which prisoners shall, under certain

conditions, be allowed to re-enter society through a gradual amelioration of their restraint and substitution of controlled freedom for continued incarceration. The granting of parole and the supervision of parolees are purely administrative functions, and accordingly may be entrusted by the legislature to non-judicial agencies. What parole statutes give to the paroling authorities—in the present instance to the State Board of Parole—is in effect nothing more than the fact-finding duty of determining in each case when the conditions prescribed by the legislature for provisional release from confinement have been complied with, and that duty may properly be placed in charge of an administrative tribunal as is so commonly done in other fields of governmental administration. * * * ''

Speaking of paroles, the court said:

'' * * * The parolee is not discharged, but merely serves the remainder of his sentence by having his liberty restrained in a manner analogous to that employed in the 'trusty' or 'honor' system of prison discipline. 'The parole authorized by the statute does not suspend service or operate to shorten the term. While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term * * *. While this is an amelioration of punishment, it is in legal effect imprisonment'. Anderson v. Corall, 263 U. S. 193, 196, 44 S. Ct. 43, 44, 68 L. Ed. 247. (Italics supplied.)''

In *Woodward v. Murdock*, 124 Ind. 439, 24 N.E. 1047, the petitioner in habeas corpus proceedings had been paroled from the penitentiary by the governor who thereafter revoked the parole and remanded the petitioner to prison on account of his violation of the conditions of the parole. One of the questions considered by the court was:

'' * * * What was the effect of the parole issued by the governor? Was it in contemplation of law

an unconditional pardon, or what it purported and was intended to be, a mere parole? and, if but a parole, was the appellant subject to reimprisonment at the will of the governor, without a hearing before some judicial tribunal? * * *

"* * *

"* * * The appellant did not receive the parole as of right, but as a matter of grace; and hence it extended no further than its terms indicated, and the appellant received it subject to all of the conditions which it imposed. * * * As we have already said, the governor had authority to grant the parole, but, as he did it as a matter of grace and not as a duty, it was his right to impose such conditions as he saw proper, and, when the appellant accepted it, he by implication, as well as by express agreement, did so subject to all of its terms and conditions. * * * Under the circumstances the appellant was at large merely at the will of the governor. The governor had it in his power to order the appellant to prison at any time. In Turner v. Wilson, 49 Ind. 581, (586), Biddle, J., said: 'In the quaint language of the old books, "the bail have their principal always upon a string, and may pull the string whenever they please, and render him in their own discharge." ' This quotation expresses exactly the relation which the appellant occupied to the governor.

"* * * During the time that he was out on parole he was not a free citizen; he was, as we have seen, still a prisoner, and, notwithstanding his prison bounds were not so contracted as were the prison bonds of the insolvent debtor at the time our laws recognized imprisonment for debt, still he was given prison bounds. He was not permitted to come into the state of Indiana. All of the consequences of the judgment were open, except that he had leave of absence from the prison. * * *"

The Woodward case is cited with approval in Ex Parte Houghton, 49 Or. 232, 89 P. 801, which is discussed infra.

■ From the foregoing authorities it appears that the status or condition of a convict who is outside prison on parole bears no relation to one practicing a lawful trade, profession or occupation under license. The modern release procedures whereby a paroled prisoner remains, not only in the constructive custody of a parole board or officer, but also under the guidance and observation of trained officials, are in marked contrast to the older procedures whereby a court or governor issued a parole with little real opportunity for supervising the conduct of the prisoner. As the opportunities for intimate knowledge concerning the character and conduct of a parolee increase, the probability of informed action in granting or revoking the parole likewise increases and the necessity of the judicial type of hearing accordingly decreases.

The legal status of persons on parole under modern penological practice having been established, we pass to the constitutional question.

In *Ex Parte Collins*, 32 Okla. Cr. Rep. 6, 239 P. 693, the authorities are reviewed at length. The petitioner for habeas corpus was paroled from the penitentiary by the governor and the parole was revoked by the successor in office of the governor, without according any hearing to the petitioner. There was in Oklahoma no statutory limitation on the power of the governor to grant paroles. It was therefore held that the governor was authorized to revoke the parole for violation of any of the conditions named therein or for any other cause by him deemed sufficient since the parolee was still under the constructive custody and super-

vision of public authority. The court considered certain cases which held that notice and hearing are necessary in order to revoke a parole. Among the cases thus considered was *State ex rel. v. Wolfer,* 53 Minn. 135, 54 N.W. 1065, which is relied upon by the petitioner in the case at bar. The court rejected the ruling of these cases and said:

"We are clearly of the opinion that, when a parole is granted containing the conditions of the Collins parole, upon a violation of any of the conditions named, or for any other cause by the Governor deemed sufficient he has power, without notice and hearing, to revoke the parole and order the apprehension and confinement of the convict, and that the courts do not have the power to review the acts and discretion of the chief executive, though the legality of the confinement of a petitioner may be inquired into by habeas corpus, and if upon any such hearing it should appear that the person confined is not the convict charged or that the revocation of the parole is a forgery, or that the official attempting to revoke is without authority, he would be entitled to be released.

In *Johnson v. Walls,* 185 Ga. 177, 194 S.E. 380, the petitioner in habeas corpus asserted the invalidity of the act of the prison commissioner in revoking a parole which had authorized the petitioner:

"* * * to go upon parole outside of the confines of the penitentiary, 'but to remain within the legal custody and under the control of said Prison Commission, and subject at any time to be taken into custody on order of said commission' for a 'violation of the conditions of his parole, or otherwise.' * * * where by the terms of the original sentence the person convicted has been sentenced to prison, the effect of a revocation of the parole, authorized under the statute 'for violation of [its] conditions, or otherwise,' does not exceed or transcend the effect of

the original sentence. Nor does it have the effect of making a prisoner of a person not then serving as such, since under the terms of the statute all paroled defendants remain prisoners under the control of the Prison Commission, although allowed to go outside of the confines of the penitentiary. Since this statute, thus operating, does not contain any provision for any prior notice or hearing before the revocation of a parole, such a requirement should not be read into the law. Accordingly, the commission may revoke paroles without such a notice or hearing; but, as in the case of other quasi-judicial or administrative bodies, there would be a restriction on its powers, that it could not act fraudulently, corruptly, or on mere personal caprice. * * *

"* * *

"The released defendant after the grant of a parole still remaining, under the statute, a prisoner 'within the legal custody and under the control' of the Prison Commission, and having the opportunity by habeas corpus to test a plain and clear abuse of the powers of the commission upon the grounds and within the rules stated, there is no merit in the attack by this petitioner upon the constitutionality of Code § 77-505, if it be given the interpretation here made, as in violation of the 'due process of law' provision of the constitution of Georgia (art. 1, sec. 1, par. 3), and of the fourteenth amendment of the constitution of the United States; or as in violation of any contractual rights created by the order of parole; or as depriving him of the right to defend his case, under article 1, section 1, paragraph 4, of the State constitution; or as exceeding the powers of the Prison Commission under the separation of government branches by article 1, section 1, paragraph 23, of the State constitution."

■ This case brought out an important and valid distinction. Even though a prisoner may not be entitled, under constitution or statute, to a hearing on re-

vocation of parole, nevertheless, upon habeas corpus he may always challenge the action of the administrative body if it acts beyond its statutory powers, or fraudulently, corruptly, or on mere personal caprice, or in the absence of any information, and, of course, he may, by his petition, raise the question of his identity as the convicted person. *United States ex rel. De Lucia v. O'Donovan,* 82 F. Supp. 435. See also *Bunch v. Clark,* 185 Ga. 179, 194 S.E. 382.

In *McCoy v. Harris,* 108 Utah 407, 160 P. 2d 721, the court, in a careful opinion considered the following question:

"Is a parolee from the State Prison entitled as a matter of law to hearing before the Board of Pardons before revocation of his parole?"

The statute provided:

"A prisoner while on parole shall remain in the legal custody and under the control of the chief adult parole and adult probation agent and the board of pardons, and shall be subject at any time to be taken back to the institution from which he was paroled. * * *"

The court said:

"From the above provisions, it is clear that a parole is in the nature of a grant of partial liberty or a lessening of restrictions to a convicted prisoner. Granting of a parole does not change the status of a prisoner; it merely 'pushes back the prison walls' and allows him the wider freedom of movement while serving his sentence. The paroled prisoner is legally in custody the same as the prisoner allowed the liberty of the prison yard, or of working on the prison farm. The realm in which he serves has been extended. He is in the custody of the state and serving his sentence outside of the prison

rather than within the walls. The parole system is reformatory and founded upon a plan and policy of helping the inmate to gain strength and resistance of temptation, to build up his self control, to adjust his attitudes and actions to social controls and standards; and it aims to extend his liberties and opportunities for normal living within the social fabric as his strength to meet new responsibilities grows and develops.

" * * *

" * * * The legal position conferred upon the party by such judgment is the obligation to serve the designated term in prison. Until that sentence is terminated, the judgment committing him to the custody of the prison authorities is still in effect. The additional liberty conferred by the parole is a result of action by the Board of Pardons, an administrative body. The parolee is still in custodia legis, and under the control of the State Board, though outside prison walls. Ex parte Taylor, 216 Cal. 113, 13 P. 2d 906; In re Heckman, 90 Cal. App 700, 266 P. 585. His being outside prison is not based upon or fixed by a judgment. Rules and regulations for the conduct of a paroled prisoner are rules and regulations for control of prisoners. Matter of Stanton, 169 Cal. 607, 147 P. 264. Violation of such rules is similar to violation of rules within the prison, and constitutes an abuse of a privilege for which the privilege may be withdrawn. Such rules confer no legal rights. They are privileges granted by the controlling authority, subject to its own terms, and may be withdrawn or withheld at its pleasure. State v. Horne, 52 Fla. 125, 42 So. 388, 7 L.R.A., N.S. 719; State v. Almy, 67 N. H. 274, 28 A. 372, 22 L.R.A. 744; State v. Everitt, 164 N.C. 399, 79 S.E. 274, 47 L.R.A., N.S. 848.
* * *"

The petition for discharge of the prisoner was denied.

In *Fuller v. The State,* 122 Ala. 32, 26 S. 146, the statute provided:

" * * * Upon the failure of any convict to observe the conditions of his parole, to be determined by the Governor, the Governor shall have authority to direct the re-arrest and return of such convict to custody, and thereupon said convict shall be required to carry out the sentence of the court as though no parole had been granted him."

In response to the petitioner's contention that the summary order of the governor deprived the prisoner of his constitutional rights, the court said:

" * * * This position takes no account of the fact that the person being dealt with is a *convict,* that he has already been seized in a constitutional way, been confronted by his accusers and the witnesses against him, been tried by the jury of his peers secured to him by the constitution and by them been convicted of crime, and been sentenced to punishment therefor. In respect to that crime and his attitude before the law after conviction of it he is a felon, at large by the mere grace of the Executive, and not entitled to be at large after he has breached the conditions upon which that grace was extended to him * * *."

In *Owen v. Smith,* 89 Neb. 596, 131 N.W. 914, the petitioner brought habeas corpus. He had been paroled from the penitentiary by order of the governor and then recommitted for violation of his parole agreement. The conditions of the parole were as follows:

" * * * The parole issued by Governor Shallenberger, after setting out certain conditions to be observed by the convict while at liberty, concludes thus: '(6) He shall, while on parole, remain in the legal custody and under the control of the Governor of the state of Nebraska. (7) He shall be liable to be retaken and again confined within the

inclosure of the state penitentiary for any reason or reasons that shall be satisfactory to the Governor, and at his sole discretion, until he receives a copy of his final discharge through the warden.' "

The statute authorized the governor to issue paroles "subject at any time to be taken back within the inclosure of the institution", and full power to retake and reimprison was conferred upon the governor. The court said:

"We think it is clear that under the terms of this section of our Code, and under the terms of the parole itself, the Governor acted clearly within his lawful powers; that he was not required to give any notice of his intention to revoke the parole of appellant, nor to grant appellant any hearing before revoking the same. Any other construction of the law would not be a kindness to the inmates of the penitentiary; for, if the Governor is given to understand that every time he grants a parole he thereby restores the convict to full citizenship to such an extent that he cannot revoke such parole except upon notice and a full hearing, he would be very loath to exercise the humane prerogative which the Code now confers upon him. * * * ''

See also *Spencer v. Kees,* 47 Wash. 276, 91 P. 963; *Arthur v. Craig,* 48 Iowa 264, 30 A. R. 395.

In *Escoe v. Zerbst,* 295 U. S. 490, 79 L. Ed. 1566, the petitioner had been sentenced to prison, but on the same day the sentencing court suspended execution of the sentence and placed the petitioner on probation. The probation officer reported to the court that the petitioner had violated the conditions of his probation and the court, without according notice or hearing, revoked the suspension of sentence and ordered the imprisonment of the petitioner. The federal statute provided that the probationer in such case "shall forth-

with be taken before the court." Since the mandate of the statute was disobeyed, it was held that the imprisonment was without authority, but on the constitutional issue, the United States Supreme Court by Mr. Justice Cardozo said:

"In thus holding we do not accept the petitioner's contention that the privilege has a basis in the Constitution, apart from any statute. Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose. Burns v. United States, 287 U. S. 216, 77 L. ed. 266, 53 S. Ct. 154. * * *"

*Ex Parte Houghton*, 49 Or. 232, 89 P. 801, was decided before the establishment of the present statutory procedures. The governor had commuted the sentence of a prisoner upon the following conditions:

" * * * this commutation is delivered to and accepted by him upon this distinct agreement, that said Chas. Houghton is to be and remain a law-abiding citizen, and in case he violates any of the laws of the United States or of the state, or of any municipality in which he lives, the Governor of the state, whoever he may be, whenever he is satisfied, by such investigation as he may see fit to make, that said Chas. Houghton has violated his agreement or any of the conditions of this commutation, he may revoke the same without notice, and without the intervention of any court * * *."

Thereafter the governor made an order reciting that he was satisfied, by investigation satisfactory to himself, that the petitioner had violated the terms of the parole, and ordered its revocation. The petitioner brought habeas corpus. The court, by Chief Justice Bean, said:

" * * * It has everywhere been held, so far as we have been able to ascertain, that under a

constitution like ours a pardon is a mere act of grace, and the pardoning power may attach to it any condition precedent or subsequent that is not illegal, immoral or impossible of performance; and, if the pardon is accepted by the prisoner, he will be bound to a compliance with the conditions imposed, and has no right to contend that the pardon is absolute * * *."

It was held that a commutation was governed by the same rule. The court said:

"Some adjudications are cited as holding that a violation of a conditional pardon must be judicially determined, and that a convict cannot be rearrested or remanded to suffer his original sentence because of an alleged nonperformance of the conditions upon a mere order of the Governor: Alvarez v. State, 50 Fla. 24 (39 South. 481: 111 Am. St. Rep. 102); State v. Wolfer, 53 Minn. 135 (54 N. W. 1065: 19 L.R.A. 783; 39 Am. St. Rep. 582); People v. Moore, 62 Mich. 496 (29 N.W. 80). But in neither of the cases referred to did the pardon provide that it might be revoked and the convict rearrested and remanded on order of the pardoning power for a violation of the condition. * * *

" * * * But, where the pardon provides upon its face that the Governor may summarily determine whether the conditions have been complied with, and, if he finds that they have not, may revoke the pardon and order the reconfinement of the offender, such stipulation becomes binding upon the convict, and authorizes his rearrest and commitment upon the terms and in the manner imposed: 24 Am. & Eng. Enc. Law (2 ed.), 595. * * *"

The court cited and distinguished *State v. Wolfer,* supra, and *People v. Moore,* 62 Mich. 496, 29 N.W. 80, both of which are relied upon by petitioner in the case at bar.

In *Wright v. Herzog,* 182 Md. 316, 34 A. 2d 460, the defendant in a criminal case was given a conditional pardon under which he was released from the penitentiary. Thereafter the governor remanded him to the penitentiary for the violation of the conditions imposed. The petitioner brought habeas corpus. The issue of constitutional right to a hearing was properly raised. The statute provided that in case of the issuance of a conditional pardon to any person:

"* * * the Governor, in the absence of any provision to the contrary expressed therein, shall be the sole judge of whether or not the conditions of said pardon have been breached, and the determination by the Governor, that the conditions of such pardon have been violated by the person receiving the same, shall be final and not subject to review by any Court of this State."

The statute expressly required a hearing whenever the Director of Parole and Probation rescinds a parole, but the court held that the prisoner was without right to hearing by the governor unless such hearing was demanded by due process of law. After reviewing many authorities, the court said:

"We are of opinion that the weight of authority sustains the validity of statutes which authorize the revocation of conditional pardons without requiring a hearing and that section 80 of Article 41 of the Code is constitutional."

Other cases upholding the power to revoke a parole without notice or hearing are: *In re Etie,* 27 Cal. 2d 753, 167 P. 2d 203; *Ex Parte Paquette,* 112 Vt. 441, 27 A. 2d 129; *Ex Parte Patterson,* 94 Kan. 439, 146 P. 1009; *Ex Parte Foster,* 60 Okla. Cr. Rep. 50, 61 P. 2d 37; *Kennedy's Case,* 135 Mass. 48; *In Re Tobin,* 130 Cal. App. Rep. 371, 20 P. 2d 91; *Bowers v. Wilson,* 143

Kan. 732, 56 P. 2d 1212; *Stephens v. Bertrand,* 151 Kan. 270, 98 P. 2d 123.

The petitioner strongly relies upon *Fleenor v. Hammond,* 116 F. 2d 982. In that case the petitioner had received a conditional pardon from the governor of Kentucky, requiring him to conduct himself as a useful, upright and law-abiding citizen. The pardon provided that if the prisoner should fail to conduct himself as required he might be rearrested and recommitted by executive order, made and entered upon the executive journal. The state court in *Commonwealth of Kentucky v. Hall,* 277 Ky. 612, 126 S.W. 2d 1056, upheld the revocation of pardon which had been made upon an ex parte finding. The prisoner then brought habeas corpus in the District Court of the United States. That court dismissed the writ but issued a certificate of probable cause as provided by 28 U.S.C.A., § 466. The Circuit Court of Appeals for the Sixth District held that the statute as construed by the state court, and as applied in the case, deprived the petitioner of liberty without due process of law. This decision was based upon the opinion of the United States Supreme Court in *Escoe v. Zerbst,* supra, where, among other things, the court said "He shall have a chance to say his say before the word of his pursuers is received to his undoing." Even a casual reading of the opinion in *Escoe v. Zerbst* will demonstrate that the court considered the statutory requirement that the defendant "be taken before the court" to be the equivalent of a requirement for a hearing and that the commitment of the prisoner was illegal solely because he was not taken before the court as required by statute. The comments of Justice Cardozo in *Escoe v. Zerbst* related expressly to rights created by federal statute.

This language was appropriated and applied in the Fleenor case as if it had been written upon the constitutional issue. For some reason, the court, in the Fleenor case, ignored the fact that the United States Supreme Court had expressly rejected the petitioner's contention of constitutional right to a hearing, and ignored the following language of Justice Cardozo:

" * * * But the power of the lawmakers to dispense with notice or a hearing as part of the procedure of probation does not mean that a like dispensing power, in opposition to the will of Congress, has been confided to the courts. The privilege is no less real because its source is in the statute rather than in the Fifth Amendment. * * *" Escoe v. Zerbst, 295 U.S. 490, 79 L. Ed 1569."

In several later decisions the courts have followed the plain language of *Escoe v. Zerbst,* supra, and have held that the hearing secured by parole acts is purely statutory. The right to such hearing is "not constitutional". *United States ex rel. Harris v. Ragen,* 177 F. 2d 303; *Bennett v. United States,* 158 F. 2d 412; *State v. Meyer,* 228 Minn. 286, 37 N.W. 2d 3; *McCain et al. v. Sheppard* (Ala.), 34 S. 2d 225.

Plaintiff also relies upon *Ex Parte Lucero,* 23 N. M. 433, 168 P. 173; *State v. O'Neal,* 147 Wash. 169, 265 P. 175; *United States v. Van Riper,* 99 F. 2d 816; *State v. Zolantakis,* 70 Utah 296, 259 P. 1044; *Plunkett v. Miller,* 161 Ga. 466, 131 S.E. 170; *Hollandsworth v. United States,* 34 F. 2d 423; *Brill v. State,* 159 Fla. 682, 32 S. 2d 607. None of these cases arose under parole statutes. In each instance the question related to a case in which a court had either suspended the imposition or execution of a sentence and placed the defendant on probation. Since the question related to

440

the revocation of probation by court action in a matter over which the court had retained jurisdiction, it is not surprising that the decisions upheld the right of the probationer to court hearing. *State ex rel. v. Wolfer,* and *People v. Moore,* both supra, have been disapproved in other cases and are distinguished in *Ex Parte Houghton,* supra. They were decided under laws wholly unlike our own and are not in point.

 In reliance upon principle and the weight of authority, we hold that petitioner had no constitutional right to notice and hearing prior to revocation of his parole. In so holding, we do not intimate that he would be without remedy if the Board had acted without any investigation or information or fraudulently, corruptly or on mere personal caprice. By its terms, the parole could not be revoked without cause, that is, without a violation found to exist by the board authorized to make such finding. However, a revocation "for cause" does not, in a case of this kind, imply notice and hearing. A California statute provides that "No parole shall be suspended or revoked without cause * * *." Penal Code of California (Deering) 1949, Sec. 3063. But it also provides that a parole may be revoked without notice and the California Supreme Court has held that there is no statutory requirement that the parolee have notice or a hearing before a parole is suspended or revoked. The statute was held valid. *In re Etie,* supra.

 In the case at bar the petition alleges in general terms that the Board acted arbitrarily, unreasonably and capriciously. The abstract of record contains no copy of the writ, though it states that one was issued. The return of the warden states facts which prima facie establish the legality of the order. The burden of proof of arbitrariness rested upon the petitioner. 25

Am. Jur., Habeas Corpus, § 150, p. 247. There is not a scintilla of evidence to support the allegation unless we hold as a matter of law that the failure to accord a hearing per se constitutes arbitrary action. This we decline to hold.

The constitutional issue, having been resolved against the contention of petitioner, we may now consider the construction of the statute, uninfluenced by the rule which requires that the court, whenever possible, should so construe statutes as to avoid unconstitutionality. There is no express statutory requirement for a notice or a hearing. There are three words of the statute, on the basis of which, the petitioner asks us to read into the statute the 'requirement of notice and hearing. The Parole Board is charged with the duty of making such investigations as may be necessary. The words to be construed are, "determine", "find" and "discretion". The Board is to *determine* whether a violation has occurred. If it *finds* a violation, then the prisoner may be taken back into confinement at the *discretion* of the Board. The meaning of none of the three words can be ascertained in vacuo. When the word "determine" is used with reference to court action, it may well be held to be the equivalent of "hear and determine". *Tracey et ux. v. MacIntyre et al.*, 29 Cal. App. 2d 145, 84 P. 2d 526. When used in matters which do not pertain to the judicial process, to "determine" may mean merely to ascertain, or to "come to a decision concerning, as the result of investigation, reasoning, etc." Webster's New International Dictionary, 2d Ed. It may mean merely "to investigate and decide in good faith". *Norwood Hospital Inc. v. Howton*, 32 Ala. App. Rep. 375, 26 S. 2d 427. An amount due may be "determined" by action of the governor

in approving a final estimate. *Union Indemnity Co. v. Ricks*, 224 Ala. 514, 140 S. 597. See also *In re Talbot's Will*, 9 N.Y.S. 2d 806. Under the California Civil Service Act, prisoners are appointed for a probationary period not to exceed six months. The statute provides:

"It shall be the duty of the appointing power during the probationary period * * * to investigate thoroughly his conduct, capacity, moral responsibility and integrity, to determine whether the employee is fully qualified for permanent civil service status."

The California court said:

"Not only must the appointing power investigate such moral and mental qualities of a probationer, but he is required to make a determination as to 'whether the employee is fully qualified for permanent civil service status'. This language could mean nothing more than that the appointing power is not clothed with authority to act arbitrarily or capriciously. Its clear implication is that the investigation to be made by the 'appointing power' is akin to that of any fact finding tribunal, and must be reported to the personnel board at the end of the second and fourth months of the probationary period. The language of the rule circumvents the arbitrary removal of a probationer for reasons other than for the lack of some of those qualities prescribed by Rule 9." *Brown et al. v. State Personnel Board et al.*, 43 Cal. App. 2d 70, 110 P. 2d 497.

The court held that the appointing power had failed to comply with the statute which requires it to give a proper statement of the reasons for dismissal, but there was no intimation that a hearing was required. It will be observed that the word "determine" is used in connection with the word "investigate", as in the case at bar.

A similar problem arises as to the construction of the word "find". The petitioner cites *Abrams v. Daugherty*, 60 Cal. App. 297, 212 P. 942 in support of the contention that the power to "find" implies the duty to accord a hearing. In that case the commissioner of corporations suspended the petitioner's license to act as a broker. The question was whether the petitioner had been accorded due process of law. The statute authorized revocation of the license only if the commissioner should "find" certain facts. It was held that property rights were involved and that the duty to "find" implied the duty to accord notice and hearing. It is clear that the construction of the statute was based upon constitutional grounds. We agree that whenever property rights or personal rights protected by the Constitution are in issue in judicial or quasi-judicial proceedings, the duty to "find" facts may well imply the duty to accord a hearing.

In the same manner, a statutory provision authorizing a public functionary to act in his "discretion" may be construed to mean judicial discretion or not, according to the subject matter involved. In a recent case, this court said:

" * * * As applied to public functionaries other than courts it is said: ' "discretion", as applied to public functionaries, means the power or right of acting officially, according to what appears just and proper under the circumstances.' " Citing many cases. Tice v. State Industrial Accident Commission, 183 Or. 593, 195 P. 2d 188.

In a statement peculiarly applicable to the case at bar, the court continued:

"Like other words, however, the significance to be attributed to the use of the word 'discretion' in

a statute varies according to the setting in which it is found and the statutory purpose."

In *State ex rel. Hopkins, Atty. Gen. v. Tindell et al.*, 112 Kan. 256, 210 P. 619, the court voted with approval the following statement from *Farrelly v. Cole*, 60 Kan. 356, 56 P. 492:

" 'Discretion is defined, when applied to public functionaries, to be "a power or right, conferred upon them by law, of acting officially in certain circumstances according to the dictates of their own judgment and conscience, uncontrolled by the judgment or conscience of others." (Judges of the Oneida C. P. v. The People, 18 Wend. 99.) It perverts and destroys the meaning of the word to hold that exercise of discretion may be reviewed or controlled by some other person or tribunal than the person on whom it is conferred.' 60 Kan. 372, 56 Pac. 497, 44 L.R.A. 464."

The statute, O.C.L.A., § 26-2308 authorizes the Parole Board to suspend or revoke a parole whenever the Board finds that a prisoner has violated the conditions of the parole "or whenever the board has been advised in writing by the governor that the said prisoner has violated the terms of a conditional pardon". It would appear unreasonable to hold that the Board, which is presumably possessed of full information concerning the conduct of the parolee, must hold a hearing before revoking the parole, but may revoke a conditional pardon, solely upon receiving notice from the governor that the prisoner has violated its terms.

The statute provides that when the Board finds a violation it may make an order authorizing any law enforcement officer to take the parolee into custody. It then provides that from and after the revocation of the parole "and until his return to custody, he shall be considered a fugitive from justice." O.C.L.A.,

§ 26-2308. Thus, under the plain wording of the statute, the revocation by order of the Board may precede his return to custody. The order of the Board made while he is still at large changes his status from parolee to fugitive from justice. How then can it be argued that the statute requires that an arrest and hearing must precede a revocation of parole?

In petitioner's reply brief we read:

"Appellant does not contend that Anderson had a statutory right to a hearing prior to the revocation of his parole, since the statutes are completely silent as to whether a parolee does or does not have a right to a hearing prior to the revocation of his parole."

Petitioner then argues to the contrary that O.C.L.A., §§ 26-2308, 26-2308.1 and 26-2308.2 were not intended to grant the Parole Board the power to revoke paroles without notice and hearing, "but merely to prescribe a method for the arrest". Petitioner fails to distinguish between action by the Parole Board and action by the Director of Parole and Probation. The Director is authorized to retake or arrest the parolee "upon being informed and having reasonable grounds to believe" that there has been a violation. O.C.L.A., §§ 26-2302 and 26-2308.1. If the arrest is made by the Director, then it is his duty to investigate, and within 15 days the parole shall "either be revoked as provided by law or such person shall be released from detention." O.C.L.A., § 26-2308.2. The Parole Board is the body "provided by law" which may revoke the parole or release the prisoner. A parole may be revoked at the discretion of the Board, based on its own investigation before arrest, or it may act after the Director has initiated proceedings by arrest-

ing the prisoner. In neither case is the Board required to accord a hearing.

In case at bar the petitioner had the burden of pleading and proving a case entitling the prisoner to the benefit of the writ. Yet, there is a complete failure either to allege or prove that he had not in fact violated the conditions of his parole. As said in *Fleenor v. Hammond,* supra.

" * * * It is a familiar rule that courts will not pronounce judgments that are mere futilities, and allegations in a petition for a writ of habeas corpus that the petitioner is held without due process of law must be specific in statement of facts supporting the legal conclusion, the adoption of which is urged. Kohl v. Lehlback, 160 U.S. 293, 295, 16 S. Ct. 304, 40 L. Ed. 432; Whitten v. Tomlinson, 160 U.S. 231, 16 S. Ct., 297, 40 L. Ed. 406. This is analogous to the rule that when a party invokes the power of the courts to hold a statute constitutionally invalid, he is not to be heard unless he has sustained or is in danger of sustaining a direct injury through its enforcement. Massachusetts v. Mellon, 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078; City of Allegan v. Consumers' Power Co., 6 Cir., 71 F. 2d 477."

In the pending case the petitioner, in effect, relies solely upon the bare claim that the prisoner is entitled to release upon habeas corpus because deprived of a hearing, regardless of whether he had or had not violated his parole. A similar situation was found in the Fleenor case in which there was a failure to allege that the prisoner had not violated his parole. In that case the Court of Appeals remanded the cause to the District Court with instructions to permit amendment of his petition:

" * * * if he is able to do so, to allege unequivocally that if granted a hearing he could

demonstrate thereat that the conditions of the pardon have been fully complied with and that none of them have been breached. * * *"

■ In the Fleenor case, the court, contrary to the holding in *Escoe v. Zerbst* and other federal cases cited, had held that the petitioner had a constitutional right to a hearing and it was apparently for that reason that the court gave the petitioner leave to amend so as to present a case entitling him to claim of constitutional right. After full examination of the authorities, we have rejected the conclusion of the Fleenor case. We hold that the finding of violation of the conditions of parole made by the Parole Board in this case is conclusive in the absence of a showing that the Board acted arbitrarily. There was ample opportunity to offer evidence of arbitrary action in the court below. None was offered. We find no occasion to remand this case to the circuit court to permit amendment alleging that the prisoner has not violated his parole, for the Parole Board has authoritatively determined that issue against him. Nor should we remand the case to permit petitioner to attempt to prove arbitrariness, since the petitioner has already had opportunity to present evidence on that issue and has failed to do so.

■ When the statutory provisions directing the Parole Board to make investigations and authorizing it to find violations and revoke paroles in their discretion are considered in their context, we think it is clear, as a matter of statutory construction, that the Board was empowered to act upon the information which it had received from its various reports and investigations and to revoke the parole of the prisoner without notice or hearing. The judgment of the lower court is affirmed. The writ is discharged and the prisoner is remanded to custody.

ROSSMAN, J., specially concurring.

The act under scrutiny contains no express requirement that the Board of Parole and Probation (§ 26-2301, O. C. L. A.) must precede an order of revocation with notice and a hearing. The petitioner argues that the act contains an implied requirement for notice and a hearing, but I think it is clear that the act contains no implication of such a nature. To the contrary, it provides that paroles may be revoked summarily; that is, without notice and a hearing.

The crucial part of the act is § 26-2308, which says:

"* * * Whenever the board finds that a prisoner has violated the conditions of his conditional pardon, parole or probation, or whenever the board has been advised in writing by the governor that the said prisoner has violated the terms of a conditional pardon, the written order of the board shall be sufficient warrant for any law enforcement officer to take into custody such person, * * *. From and after the cancellation or revocation of the parole, probation or conditional pardon of any convicted person, and until his return to custody, he shall be considered a fugitive from justice."

Thus, the act plainly contemplates that the revocation may be summary.

It is not difficult to discover the reasons which prompted the legislature to provide for summary revocation of paroles. If the board, upon noticing that one of its parolees was about to become a recidivist, had to send him notice, followed later by a hearing, it might find that the horse would be stolen before the stable door could be locked. The situation calls for prompt action, and the act therefore provides for summary revocation. No statute confers upon the

board authority to issue a summons, a warrant of arrest or any other process whereby a parolee could be taken into custody pending the outcome of a hearing. The act enables the board to issue only one form of writ and that is the warrant which is issued after the revocation of a parole. It terms the erstwhile parolee "a fugitive from justice."

Since the act provides for summary revocation of paroles, it is not surprising to find that the act does not invest the Board of Parole and Probation with power to conduct hearings. Thus, the board has no power to issue subpoenas either upon its own volition or upon the request of any person. Nor does the act enable any member of the board to swear witnesses. There is nothing in the act which expressly requires the board to enter findings of fact of the kind made by judicial bodies. Nor is there any provision which authorizes an appeal from an order entered by the board. The absence of provisions of the kind just mentioned shows that the legislature did not intend that the board should conduct hearings. Its procedure is informal. It obtains the information upon which it acts through inspection of its files and informal conferences—not through adversary proceedings. It is an administrative, not a judicial, body.

The character of the work performed by the board shows that its procedure must be patterned upon that of administrative, and not judicial, bodies. The board employs a director of parole and probation (§ 26-2302, O.C.L.A.) and has a staff of probation officers and assistants (§ 26-2312, O.C.L.A.). From time to time applicants for parole appear before the board and are interviewed. From those informal conferences the members of the board receive impressions of those

who later become parolees. After an inmate of the penitentiary has been paroled he renders to the board regularly reports about himself. The information about him which thus accumulates in the board's files is augmented by accounts concerning him which are submitted by the member of the board's probation staff assigned to the parolee. In determining whether a parole should be revoked, the board undoubtedly takes into consideration impressions of the suspected parolee that it gained in the manner just indicated. It analyzes symptoms and character rather than weighs evidence. It is required to determine a non-legal problem; that is, whether the parolee is about to become a recusant. A prudent performance of a board member's duty may call for intuition rather than for a knowledge of the rules of procedure, and for training in the social sciences rather than a course of study in a law school. The Board of Parole and Probation is by no means the only one in the state which has the power to grant paroles and revoke them. For example, § 127-217, O.C.L.A., makes provision whereby the superintendent of the State Hospital for the insane may grant a parole to an inmate of that institution. It also authorizes the revocation of paroles. Section 127-606, O.C.L.A., empowers the State Board of Control to grant paroles to youths committed to the State Training School and to revoke them. The same board is authorized by § 127-503, O.C.L.A., to grant paroles to inmates of the Industrial School for Girls, and § 127-505 requires that board "to make and publish rules and regulations governing the paroling" of inmates of that school. No one has ever suggested that the superintendent of the State Hospital and the Board of Control must conduct hearings before terminating a parole.

It has been commonly assumed that those agencies act informally and that their revocations are summary. Obviously, if the revocation of a parole had to be postponed until a parolee, whose conduct threatens a repetition of his former crimes, could be served with a notice and afforded a hearing, the public interest would suffer and parole would achieve a degree of disrepute which would lead to the repeal of the statutes which have just been mentioned.

The following is quoted from *People ex rel. Lodes v. Department of Health,* 189 N. Y. 187, 82 N. E. 187:

"'* * * The statute, as we have seen, has given the board of health no power to hear, try or determine cases. Its duties are therefore not judicial, but executive or administrative, and at times must be exercised summarily, as was said in Metropolitan Board of Health v. Heister, 37 N. Y. 661: 'The power to be exercised by this board upon the subjects in question is not judicial in its character. It falls more properly under the head of an administrative duty.' * * *.

"The powers of the members of the board of health being administrative merely, they can issue or revoke permits to sell milk in the exercise of their best judgment, upon or without notice, based upon such information as they may obtain through their own agencies, and their action is not subject to review either by appeal or by certiorari."

No inmate of a penal institution has a constitutional right to the enactment of a statute whereby he may secure a parole. *Neal v. Himes,* 180 Ky. 714; 203 S.W. 518. Nor does anyone have a constitutional right to the enactment of a parole statute whereby paroles can be terminated only in a manner which meets with his approval.

When a prisoner is granted a parole under the statute before us, the privileges which he thereby secures are subject to summary termination; that is, they run for no fixed term whatever. They do not even extend to a day for a hearing, for the act under which the parole privileges were granted requires no hearing prior to revocation. In short, a parolee has no vested rights in the privileges afforded by his parole. The very statute under which the parole was granted authorizes its summary destruction.

No official is ever permitted to act arbitrarily or in violation of the law which governs his office. The extraordinary remedies, such as mandamus and habeas corpus, always afford protection against the unlawful administration of the law. Accordingly, if the board should promulgate rules and regulations governing the conduct of parolees which are not authorized by §§ 26-2305 and 26-2308, O.C.L.A., or if it should revoke a parole for some reason not countenanced by § 26-2308, its action would be unlawful and could be challenged in the courts.

I concur in the result of the majority opinion, but submit the above as a statement of my reasons.

ON PETITION FOR REHEARING

*Joseph P. Meier,* of Salem, for the petition.

*George Neuner,* Attorney General, and *Cecil H. Quesseth,* Assistant Attorney General, contra.

BRAND, C. J.

The petition for rehearing is denied. Our original opinion is fortified by the following decisions: *Ander-*

*son v. Corall,* 263 US 193, 68 L Ed 247; *Biddle v. Asher,* 295 F 670; *Jones v. Clemmer,* 163 F 2d 852; *Fuller v. State,* 122 Ala 32, 26 S 146; *Commonwealth ex rel v. Minor,* 195 Ky 103, 241 SW 856; *Jacobs v. Crawford,* 308 Mo 302, 272 SW 931; *Commonwealth v. Polsgrove,* 231 Ky 750, 22 SW 2d 126; *Argon v. State,* 123 Tex Cr Rep. 151, 58 SW 2d 108; *Pearson v. Hollowell,* 47 SD 458, 199 NW 165; *Ex parte Millert,* 144 Kan 745, 220 P 509; 39 Am Jur, Pardon, Reprieve and Amnesty, § 94, p. 578; *People v. Ragen,* 396 Ill 554, 72 NE 2d 311.